Sidney A. **CLARK**, et al., Plaintiffs, Appellees,

v.

Donald **TAYLOR**, et al., Defendants, Appellants.

No. 82–1746.

United States Court of Appeals, First Circuit.

Argued May 3, 1983.

Decided June 17, 1983.

Eileen G. Cooney, Sp. Asst. Atty. Gen., with whom Dennis J. Roberts, III, Atty. Gen., Providence, R.I., was on brief, for defendants, appellants.

Edward L. Gerstein, with whom Gerstein & Stolle, Providence, R.I., was on brief, for plaintiff, appellee Douglas S. Gomes.

Before COFFIN and BOWNES, Circuit Judges, and BONSAL,* Senior District Judge.

COFFIN, Circuit Judge.

Defendants appeal from two jury verdicts holding them liable to plaintiff, Douglas S. Gomes, for violation of his constitutional and state law rights and awarding him $75,000 in compensatory and punitive damages. On appeal, as in the proceeding below, defendants challenge both the sufficiency of the evidence to support the liability of each defendant on the theories advanced by plaintiff and the excessiveness of the damage award. The state also objects to the court's exercise of pendent jurisdiction over it. Having reviewed the record, we find sufficient evidence to support the liability of each of the defendants and the awards of both compensatory and punitive damages. We agree, however, that having no independent federal basis for jurisdiction over the State of Rhode Island, the court should not have exercised pendent jurisdiction over it.

At the time of the incident that is the subject of the suit, November 2–3, 1974, plaintiff was an inmate at the Adult Correction Institute (ACI) in Rhode Island. In the course of a state police investigation of

* Of the Southern District of New York, sitting by designation.

a murder in the prison, plaintiff and several other inmates [1] were subjected to a "benzidine test" to determine whether they had otherwise undetectable blood on their skin. The test involved the direct application of a chemical solution of benzidine, glacial acetic acid, and sodium perborate to the arms and upper portion of the inmates' bodies. If the solution had turned blue, it would have indicated the presence of blood on plaintiff's skin.

Plaintiff subsequently discovered that contact with benzidine may cause cancer of the bladder. He brought suit under 42 U.S.C. § 1983 in the United States District Court for the District of Rhode Island against the Warden of the ACI, the Director of the State Crime Laboratory (Crime Lab), four state police officers and the State of Rhode Island, alleging deprivation of rights guaranteed to him by the Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution and seeking recovery for his physical and emotional damages. He also invoked the court's pendent jurisdiction over state law claims of negligence and battery.

The case was tried to a jury in March 1980. At the close of plaintiff's evidence, defendants moved for a directed verdict. The court denied the motion. It also declined to hold that the State of Rhode Island was immune from suit under the Eleventh Amendment. At the close of all of the evidence, the court denied renewed motions for a directed verdict and for dismissal of the pendent claim against the state, but instructed the jury that the state could not be liable on the constitutional claims. The court submitted the case to the jury with special interrogatories for each defendant and on *each* of plaintiff's theories of recovery: due process, Fourth Amendment, privacy, battery and negligence. Each interrogatory requested a verdict for plaintiff or defendant and, if the verdict was for plaintiff, an assessment of compensatory, nominal and punitive damages.

The jury returned verdicts against all named defendants on the due process claim, against all defendants except Dr. DiFanti, Director of the Crime Lab, on the Fourth Amendment and privacy claims and against all defendants on the battery and negligence claims. The total award was $74,299.

Defendants moved for judgment n.o.v., alleging that the evidence was insufficient to support liability against any of the defendants and that the court should not have exercised jurisdiction over the state. In the alternative, defendants moved for a new trial, alleging that the verdicts were excessive, inconsistent, duplicative and against the weight of the evidence. The court denied the motion for judgment n.o.v.. Because the jury had awarded both nominal and compensatory damages against each defendant, however, the court concluded that the jury had misunderstood the court's instructions. The court therefore ordered a retrial on the issue of damages. Noting defendants' argument that the award of compensatory damages on each of a number of legal theories represented multiple recovery for the same injury, the court determined that on retrial the jury should be given one interrogatory as to damages arising out of all of the constitutional claims. The court reserved determination of the preferable manner in which to submit the state law claims to the jury.

On retrial, by agreement of the parties, the jury was given one interrogatory requesting awards for compensatory and punitive or nominal and punitive damages for all of the constitutional and state law theories of recovery against all of the defendants. The parties also agreed that the plaintiff would be entitled to judgment against each defendant in the amount of the verdict returned by the jury, but that in no event should the plaintiff be entitled to recover from any or all of the defendants a sum exceeding the total amount of the jury's award. The jury awarded plaintiff $60,000 compensatory and $15,000 punitive

1. Plaintiff originally brought suit with two other inmates who were subject to the benzidine test. On plaintiff's motion, his case was severed for trial.

damages. Defendants' motions for judgment n.o.v. and for a new trial were denied.

## I. Sufficiency of the Evidence

As a preliminary matter, we note that although plaintiff advanced a plethora of alternative theories to support his claim for damages, each of those theories is addressed to the same set of facts and the same injuries caused by the same actors. As defendants pointed out in their challenge to the first damage awards, whether defendants are liable to plaintiff under one or all of those theories should not affect the total damage award, since the amount of compensatory damages properly awardable does not depend on the number of theories under which plaintiff may recover, but on the extent of his injury. *See Clappier v. Flynn,* 605 F.2d 519 (10th Cir.1979); *Stringer v. Dilger,* 313 F.2d 536, 541 (10th Cir.1963). Neither should the number of theories under which an individual defendant is liable affect his proportionate share of the award. The defendants agreed to have damages assessed against them as a group, not according to their individual contributions to plaintiff's injury. Thus, assuming that there is sufficient evidence to support liability against each of the defendants on at least one of the theories on which the jury found them liable,[2] any error of the court in refusing to dismiss the judgments of liability on other theories would be harmless. With that in mind, we turn to defendants' challenges to the sufficiency of the evidence supporting the verdicts against them on liability.

### A. Warden Mullen

The jury found Warden Mullen liable for denying plaintiff's constitutional rights of privacy, due process and freedom from un-

reasonable searches. However it is captioned, the essence of plaintiff's constitutional claim is that he was denied his right not to have unwanted and dangerous things done to his body. We are satisfied that compensation is available under section 1983 for such a claim. *See Ingraham v. Wright,* 430 U.S. 651, 679 n. 47, 97 S.Ct. 1401, 1416 n. 47, 51 L.Ed.2d 711 (1977) (recognizing a liberty interest in freedom from bodily restraint and punishment and leaving open a determination of the circumstances under which corporal punishment of a public school child may implicate substantive rights under the due process clause); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed.2d 183 (1952) (due process violated by forcible extraction of evidence from defendant's stomach); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (Fourth Amendment requires examination of whether extraction of blood sample was a search reasonable in manner); *Rogers v. Okin,* 634 F.2d 650, 653 (1st Cir.1980) (right to refuse unwanted drugs derives from the due process clause, "most likely as part of the penumbral right to privacy, bodily integrity, or personal security"); *Runnels v. Rosendale,* 499 F.2d 733 (9th Cir.1974) (operation performed on prisoner without his consent formed basis for section 1983 suit to vindicate prisoner's constitutional right to personal security and privacy); *James v. United States,* 358 F.Supp. 1381, 1386 (D.R.I.1973) (recognizing bases in the Fourth, Eighth and Fifth Amendments for recovery for the application by an untrained police officer of unreasonable force against one in custody).

Even if section 1983 provides a remedy for plaintiff's injury, defendants urge that there is no evidence that Warden Mullen was involved in conducting the benzidine

---

**2.** We note that this is not a case in which the issue of liability was presented to the jury on five alternative theories, without special interrogatories to determine on which theories the jury found defendants liable. If that had been the case, we would be compelled to examine the supportability of each theory, since otherwise we could not be sure that the jury had not found liability on the one theory that lacked sufficient evidentiary support. *See Jones v.*

*Miles,* 656 F.2d 103, 106 n. 4 (5th Cir.1981). In this case, the special interrogatories indicate that liability was found on each claim except the Fourth Amendment and privacy claims against Dr. DiFanti. Assuming that there is sufficient evidence to support liability against each of the defendants on at least one of the accepted theories, the judgments of liability can stand.

test on plaintiff—either directly or by exercising supervisory responsibility over the state police officers who conducted the test. The evidence showed only that the Warden was present in the hall through which plaintiff was brought on his way to the committing room where the test was administered and that as plaintiff was brought through the hall he was shouting obscenities and requesting a lawyer.[3] The Warden also acknowledged that he had a statutory obligation to protect the health, care, safety and well being of prisoners in his custody.

■ Liability under section 1983 may be imposed both for action that deprives a plaintiff of a constitutional right and for failure to act, when there is a duty to act, to prevent such a deprivation. *See DiMarzo v. Cahill,* 575 F.2d 15, 17–18 n. 3 (1st Cir.1978). *See generally Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) ("[§ 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions"); *Byrd v. Brishke,* 466 F.2d 6, 10 (7th Cir.1972) (under general tort law principles, a person under an affirmative duty to act may be held responsible for the consequences of a negligent failure to act.). Liability for failure to act has most often been found when the defendant is in a supervisory position over the parties whose conduct plaintiff complains of. *See, e.g., King v. Higgins,* 702 F.2d 18 (1st Cir.1983); *Hampton v. Hanrahan,* 600 F.2d 600, 626–27 (7th Cir.1979); *DiMarzo v. Cahill, supra.* Even absent supervisory authority, however, a party's position of responsibility may impose on him a duty to intervene to prevent a constitutional violation. *See, e.g., Putman v. Gerloff,*

639 F.2d 415 (8th Cir.1981) (deputy could be liable for failing to intervene to prevent sheriff from unlawfully punishing a prisoner); *Byrd v. Brishke, supra,* 466 F.2d at 11 (nonsupervisory officers present at summary punishment of plaintiff had duty to intervene—"to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace"); *Wilkinson v. Ellis,* 484 F.Supp. 1072, 1085 (E.D.Pa.1980) (prosecutors' quasi-judicial position imposed on them a duty to intervene to prevent summary punishment inflicted in their presence).

■ We add the important emphasis that a prison official like defendant Mullen cannot be liable under section 1983 for merely negligent failure to act, *see Procunier v. Navarette,* 434 U.S. 555, 566, 98 S.Ct. 855, 862, 55 L.Ed.2d 24 (1978). He can, however, be liable for a failure to act that reflects a reckless or callous indifference to the rights and safety of the prisoners in his charge. *See Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

■ The evidence in this case was sufficient to support a finding that defendant Mullen had a duty to protect the safety and well being of plaintiff and that his failure to intervene to prevent the benzidine test reflected a reckless and callous indifference to plaintiff's safety. Defendant Mullen's statutory duty to plaintiff continued as long as plaintiff was in his custody, despite the fact that he may have had no control over the activities of the state police. *See R.I. Gen.Laws* § 13–2–21 (Repealed 1976).[4]

---

**3.** Perhaps the most comprehensive description was plaintiff's testimony:

"Yeah, as I came through the rear hall, like when they grabbed me and they was rushing me through the rear hall, I put up some resistance until I got right into the rear hall and I seen the warden, and being that he was the warden, and a former state police captain, and he knows better than this to take somebody out under this type of procedure, I appealed to him, you know, to stop what was going on. I said, look, Mullens, I said you know better than this. You know that it's

not mandatory for me to talk to the state police without representation. I would like my lawyer here. I'm not complying with this. I want it recorded. So I explained, more or less in that fashion. He just disregarded me, and I went to swearing and making a lot of noise so I can bring it to the inmates' attention what was going on, so therefore when I did bring about legal action on them I would have witnesses to what was going on."

**4.** R.I.Gen.Laws § 13–2–21 provided that:

Whether or not defendant Mullen knew that the benzidine test was being performed or of the carcinogenic properties of the chemical, the jury could fairly conclude that in light of the facts that he apparently was a former captain of state police, that the test had been performed on several inmates who had been brought to the committing room shortly before plaintiff was brought to it, and that plaintiff was visibly upset and requested a lawyer when he was escorted past the Warden, the Warden's failure to inquire as to what was being done to the inmates or to respond to plaintiff's request for a lawyer evidenced a breach of his duty of care and a reckless and callous indifference to plaintiff's safety.

In light of our decision regarding the constitutional basis for Warden Mullen's liability, we need not address the sufficiency of the evidence to support the state law claims of negligence and battery.

B.  Dr. DiFanti

■ At the time of the incident, Dr. DiFanti was director of the State Crime Lab. On request of the state police, he supplied them with the benzidine they applied to plaintiff. Dr. DiFanti challenges the imposition of liability on him by pointing out that there is no evidence that he participated in the application of benzidine to plaintiff's skin or that he knew that the police officers were going to do so. Essentially, defendant urges that he cannot be liable under section 1983 for negligent failure to warn of the dangers of benzidine.

The Supreme Court has recently addressed the applicability of section 1983 to a claim of negligence and indicated that sec-

tion 1983 would be available to remedy a negligently caused constitutional violation. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Even assuming, however, that a section 1983 recovery in this case requires something more than "mere negligence", *see, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (§ 1983 liability for an Eighth Amendment claim of indifference to medical needs requires "deliberate indifference to serious medical needs"), we are satisfied that the conduct complained of here was egregious enough to satisfy that higher standard.[5]

The evidence adduced at trial included the following: Dr. DiFanti purchased benzidine in bottles labelled "BENZIDINE WARNING! DUST HAZARDOUS RAPIDLY ABSORBED THROUGH SKIN MAY BE CARCINOGENIC AVOID BREATHING DUST OR VAPOR". When the state police requested benzidine in either late 1973 or early 1974, Dr. DiFanti supplied it to them in a bottle labelled simply "Benzidine". Although Dr. DiFanti was aware of the possible connection between benzidine and cancer and of the fact that in 1973 benzidine had been applied directly to the skin of a murder suspect by the Rhode Island State Police, he made no effort to warn members of the state police not to apply benzidine directly to the skin of a living person. Based on this evidence, the jury could conclude that Dr. DiFanti's conduct manifested such disregard for the safety of those on whom the benzidine might be applied as to render him personally responsible for their injuries.

"The warden of the adult correctional institutions shall receive into his custody and safely keep in said institutions every person who shall be committed thereto until he shall be legally discharged therefrom and the liability of the committing officer shall cease and the liabilities of said warden shall commence immediately upon the entering and signing of the commitment by the committing officer in the book of said institutions kept for that purpose."

**5.** The parties have not addressed the issue whether Dr. DiFanti should, like the other offi-

cials sued here, be entitled to a qualified immunity from liability for actions taken within the sphere of his official responsibilities. The court gave the jury a general instruction on the qualified immunity accorded to public officials for actions taken in good faith. We are aware of no basis for according immunity to Dr. DiFanti, but even if there were, it would not affect the outcome of the case. The evidence was sufficient for the jury to have concluded that Dr. DiFanti acted with reckless disregard of the safety of plaintiff and other inmates like him.

Defendants also urge that even if Dr. DiFanti was negligent, there is no evidence that plaintiff's injury was substantially a result of Dr. DiFanti's failure to warn of the hazards of benzidine, since the state police had been warned of the irritant qualities of the acetic acid which is mixed with benzidine to perform the "benzidine test" and they used it anyway. We are satisfied that the difference between the dangers of acetic acid and of benzidine are substantial enough that the jury could reasonably conclude that the lack of warning regarding benzidine was a substantial cause of the fact that it was used on plaintiff.

C. State Police Officers

The state police officers have not challenged the verdicts against them on the negligence and battery claims. As liability on those claims is sufficient to support an award of damages, the court's refusal to direct a verdict on the constitutional claims, even if it were error, would be harmless error. Lest there be any doubt of the court's jurisdiction over the state police officers, however, *see infra,* at 11–13,[6] we uphold the judgment against them on both the constitutional and the pendent state law claims.

■ Defendants challenge their liability under section 1983 by urging that there is insufficient evidence that the amount of benzidine used in the solution created an unreasonable risk of harm or that defendants were aware of the risk to support recovery against them for an unreasonable search or for violation of plaintiff's rights of privacy and due process.[7] We disagree. Plaintiff introduced unrebutted evidence that benzidine is a primary carcinogen that is rapidly absorbed through the skin. De-

fendants admitted that prior to the application of the solution to plaintiff, they had learned of a possible connection between benzidine and cancer and that they had discussed the connection among themselves. The jury could reasonably have concluded that the defendants knew or should have inquired further about the hazards of benzidine and that their failure to do so belies their argument that they were at all times acting in good faith. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

II. Exercise of Pendent Jurisdiction Over the State of Rhode Island

■ The parties agree that the State of Rhode Island is a proper defendant in this action only to the extent that it is liable, on a theory of respondeat superior, for the actions of its employees. They also agree that the court properly instructed the jury that the state could not be liable for those actions on the basis of section 1983. *See Monell v. New York Dept. of Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978). They disagree, however, as to whether the district court erred in retaining jurisdiction over Rhode Island based only on the pendent state law claims and the state's respondeat superior responsibility under those claims.

It is understandable that the court decided to retain jurisdiction since, as it appears from the record, the basis for the state's current objection to jurisdiction was not clearly presented to the district court until the trial was almost over. Nevertheless, because of the Supreme Court's insistence that a district court not exercise jurisdiction over a party that Congress has expressly or impliedly excluded from the reach of the

---

6. Notwithstanding our deciding the constitutional issue, we doubt that *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), should be read to have any effect on the court's jurisdiction over the police officers based on pendent state law claims even if we were to conclude that the evidence was insufficient to support the federal claims against them. Dismissal at this stage would involve a judgment on the merits, not a determination that federal jurisdiction was lacking to begin

with. *Cf. Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

7. Because of the jury's verdict on the privacy and due process claims, it is apparent that it concluded that the search was at least unreasonable in manner. We therefore need not reach defendant's argument that the exigencies of the situation justified a warrantless search.

relevant jurisdictional statute, *see Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), we are compelled to conclude that plaintiff's pendent state claim against the State of Rhode Island should have been dismissed.

It appears from the record that the first suggestion that the state was not a proper defendant was made at the close of plaintiff's case. At that point, counsel for defendants urged that the state was entitled to immunity from damages under the Eleventh Amendment and that the state tort claims act did not apply in an action in federal court. The district court rejected that argument. At the close of all of the evidence, counsel for defendants again urged that the claim against the state should be dismissed. The court noted that

"With respect to the defendants' motion, the argument is made that the defendant, State of Rhode Island, is a defendant only with respect to certain pendant [sic] claims, and that there is no independent basis for jurisdiction by this court and, therefore, that this court should not assume jurisdiction.

I might point out that this matter has been tried to a jury commencing on March 10, 1980. This is the sixth trial day. I'm reluctant to impose the same burden upon another court some other place, and additionally, there is an issue of statute of limitations, which would have the effect of barring a suit elsewhere. It seems to me under those circumstances, that there are very strong reasons of policy why the Rule 50 motion should not be granted at this time, and it is denied."

We acknowledge the reasonableness of the court's decision that considerations of judicial economy and fairness to the plaintiff weighed in favor of its retaining jurisdiction over the state. As the court noted, the problem was not brought to its attention until six days into a trial that followed three years of pretrial proceedings. There

is no apparent reason why defendants could not have brought to the court's attention years earlier that the plaintiff had no constitutional claim against the state and that pendent jurisdiction over it was therefore improper. As we read the Court's opinion in *Aldinger v. Howard, supra,* however, the issue whether the district court should have retained jurisdiction over the pendent state claims is not, under the circumstances of this case, one committed to its discretion, *see Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 772 (D.C.Cir.1982), but is a jurisdictional issue, as to which Congress' intent is decisive.

In *Aldinger,* the trial court had exercised jurisdiction over a party, the County of Spokane, Washington, regarding whom it was clear from the outset of the case there was no independent basis for federal jurisdiction. The federal claim was, as in this case, a civil rights claim and the court's jurisdiction was grounded in 28 U.S.C. § 1343. The Supreme Court held that because a county was not a "person" for purposes of section 1983,[8] counties must also be excluded from the reach of the jurisdictional statute, section 1343, and courts are not free to circumvent that exclusion by exercising pendent jurisdiction over the excluded party. The issue in *Aldinger* was distinguished from that in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), because in *Gibbs* the jurisdictional statute was broad and the only constitutional hurdle was Article III. In *Aldinger,* because section 1343 was limited by the scope of the substantive statute, there was a second constitutional hurdle— not only whether Article III permits jurisdiction, but also whether "Congress in the statutes conferring jurisdiction has ... expressly or by implication negated its existence." 427 U.S. at 18, 96 S.Ct. at 2422.

The case before us is not identical to that before the Court in *Aldinger.* In addition to the fact that the jurisdictional issue was not raised until mid-trial, it could be argued

---

**8.** *Aldinger* predated the Court's decision in *Monell* that a county was, in fact, a person under section 1983. *Monell,* however, did not other-

wise affect the reasoning of the Court in *Aldinger. See Charles D. Bonnano Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 6–8 (1st Cir.1983).

that even though the state is not liable under section 1983 for the actions of its employees, it is, in contrast to the county in *Aldinger,* a "person" under section 1983. *See, e.g., Marrapese v. Rhode Island,* 500 F.Supp. 1207, 1210–12 (D.R.I.1980) (*Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), does not foreclose suits against a state under section 1983, if the state has consented to be sued). We need not decide whether the state is a person under section 1983, because, even assuming that it is, the fact that Congress has indicated its intent that the state not be liable under section 1983 based only on a theory of respondeat superior, *see Monell v. New York City Dept. of Social Services, supra,* 436 U.S. at 692, 98 S.Ct. at 2036, appears to us sufficient to bring this case within the rationale of *Aldinger.* In *Aldinger,* the Court indicated that "the reach of the statute conferring jurisdiction should be construed in light of the *scope of the cause of action* as to which federal judicial power has been extended by Congress", 427 U.S. at 17, 96 S.Ct. at 2421 (emphasis added). The scope of the cause of action under section 1983 is not broad enough to include jurisdiction over the State of Rhode Island based solely on its employment relationship with the individual defendants in the case. Particularly in light of the fact that the state claims in this case add nothing to plaintiff's section 1983 claim, but simply provide alternative bases for recovery for the same injury caused by the same actors, it appears to us clear that the Court does not intend a plaintiff to be able to circumvent the immunity provided under section 1983 by appending state law theories of recovery to his complaint. The judgment against the State of Rhode Island must, therefore, be set aside.

## III. Compensatory Damages

■ Defendants challenge the jury's award of $60,000 in compensatory damages. They urge that the evidence was insufficient to establish that plaintiff has a genuine fear of developing cancer and that future medical expenses which plaintiff may incur are too speculative to support an award for compensatory damages. In evaluating such a challenge, we rely heavily on the judgment of the trial court, who has had the benefit of hearing all of the evidence and observing the demeanor of the witnesses. Decisions as to the sufficiency of the evidence supporting an award of damages and the reasonableness of the size of that award are committed primarily to his sound discretion. *Bonn v. Puerto Rico International Airlines, Inc.,* 518 F.2d 89, 94 (1st Cir.1975).

■ As to defendants' contention that any future medical expenses are too speculative to support an award of damages, we note that defendants did not challenge the court's instruction that the award could include any reasonable and necessary expense for medical, surgical, hospital and other services that are reasonably certain to be required by plaintiff in the future. Neither do they now urge that the jury should not have been able to consider future medical expenses. Their argument must be, therefore, that the award for those expenses was simply too great.

The principle obstacle to defendants' argument is that the jury did not make a specific award for future medical expenses. On agreement of the parties, the jury returned a general verdict on compensatory damages, including both physical and mental distress and reasonably foreseeable medical expenses. Our proper review of such a verdict is not to parse the award into its various components, but to determine whether the award as a whole is within the universe of possible awards which are supported by the evidence. *See Narcisse v. Illinois Central Gulf R.R. Co.,* 620 F.2d 544, 547 (5th Cir.1980). Particularly in a case such as this, where the general damage award includes compensation for pain and suffering, we are reluctant to disturb a jury award unless it is "grossly excessive" or "shocking to the conscience". *See Kolb v. Goldring, Inc.,* 694 F.2d 869, 871 (1st Cir. 1982); *LaForest v. Autoridad de Las Fuentes Fluviales,* 536 F.2d 443, 447 (1st Cir.1976); *Rivera v. Rederi A/B Nordstjernan,* 456 F.2d 970 (1st Cir.1972).

We are satisfied that the jury's award of $60,000 in compensatory damages is within the universe of possible awards that are supported by the evidence in this case. Besides evidence of immediate physical discomfort from the test and subsequent skin rashes, the bulk of plaintiff's evidence in support of his claim for damages was addressed to his mental anguish. He produced three experts who testified as to the effects of even one exposure to benzidine. According to one of those experts, benzidine is considered a primary carcinogen, exposure to which, for as little as a minute, causes a permanent error to be imprinted in the DNA molecule and which, after a period of 14 to 30 years, may then result in bladder cancer. That expert also testified that because of plaintiff's exposure to benzidine, his risk of developing bladder cancer had increased from one in ten thousand to one in ten. Plaintiff also introduced two witnesses who testified that plaintiff had expressed a fear of developing cancer which, in their opinion, was genuine. One of those witnesses was a priest and chaplain at ACI who counseled plaintiff for eight to ten months regarding his fear of cancer.

Defendants insist that plaintiff's fear is not genuine. The credibility of plaintiff and his witnesses, however, was a question for the jury, not for the trial court and certainly not for this court on appeal. *See Rios v. Empresas Lineas Martimas Argentinas,* 575 F.2d 986, 990 (1st Cir.1978). Assuming that the jury accepted plaintiff's fear as genuine, recovery of compensatory damages for mental suffering is appropriate. *Brule v. Southworth,* 611 F.2d 406, 411 (1st Cir.1979); *see also Plummer v. United States,* 580 F.2d 72, 77 (3d Cir.1978). In light of the evidence of plaintiff's mental and physical suffering and the greatly increased risk that he may develop cancer and incur substantial medical expenses, *see Martin v. City of New Orleans,* 678 F.2d 1321, 1327 (5th Cir.1982), we cannot say that the jury's award of $60,000 in compensatory damages was either "grossly excessive" or "shocking to the conscience." *See Kolb v. Goldring, supra.*

## IV. Punitive Damages

Defendants' final challenge is to the sufficiency of the evidence to support an award of punitive damages. This objection need not detain us long. Punitive damages in a section 1983 suit are appropriate where there is evidence that the defendants' conduct is motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). In this case, as in *Smith,* to the extent that the defendants are officials who are entitled to qualified immunity, the threshold of conduct for which punitive damages may be assessed is virtually the same as that required for an award of compensatory damages. We have already determined that there was sufficient evidence for the jury to conclude that each of the individual defendants acted with reckless indifference to plaintiff's constitutional rights. *See supra* at 10–11. Based on the same evidence, the jury could conclude that punitive damages were appropriate. $15,000 in punitive damages is not grossly excessive.

*The judgments of liability and the district court's award of $60,000 compensatory and $15,000 punitive damages are affirmed. The district court's denial of the motion of defendant State of Rhode Island that the pendent state law claims against it be dismissed is reversed. The district court is instructed to vacate the judgment of liability and the award of damages against defendant State of Rhode Island.*