**Albert BANNISTER, Jr., Plaintiff,**

v.

**Joseph PONTE, et al., Defendants.**

**Civ. A. No. 83–0753–C.**

United States District Court,
D. Massachusetts.

May 30, 1985.

Richard Neumeier, Parker, Coulter, Daley & White, Boston, Mass., for plaintiff.

Vincent L. Di Cianni, Asst. Atty. Gen., Boston, Mass., for defendants.

**922**

MEMORANDUM

CAFFREY, Chief Judge.

Plaintiff Albert Bannister, an inmate at the Massachusetts Correctional Institution at Walpole ("MCI Walpole"), has brought this action against several present and former employees of the Massachusetts Department of Corrections ("DOC") pursuant to 42 U.S.C. § 1983. The present defendants are Joseph Ponte ("Ponte"), Superintendent of MCI Walpole, Michael Corsini ("Corsini"), Unit Manager at Walpole, and the three members of a DOC disciplinary board. *See* 103 CMR § 430.13. The matter is now before the Court on the defendants' motions for summary judgment.

There are three identifiable factual and legal issues before the Court: (1) whether the transfer of a prisoner in violation of state law is a cognizable injury under § 1983; (2) whether there is a genuine issue of material fact regarding acts or omissions by defendants Ponte and Corsini which would give rise to liability under § 1983; and (3) whether there is a genuine issue of material fact as to any acts or omissions by the disciplinary board which would give rise to liability under § 1983.

The plaintiff's amended complaint alleges certain facts, the substance of which is as follows. On August 24, 1982 the plaintiff was involved in an altercation with another inmate named Larrabee. Corrections Officers intervened, returning Bannister to the Middlesex I cell block, where he had been housed prior to the fight. On August 27, 1982, defendant Corsini informed the plaintiff that he was being moved to the Middlesex II cell block, where Larrabee was housed. The plaintiff objected to this move, telling Corsini that his life would be in substantial danger if he were moved to the block where Larrabee lived. Initially, Bannister was placed on "awaiting action" status in Middlesex II, which involved his being locked in a cell a substantial portion of each day. Allegedly, pertinent state regulations were violated in that no disciplinary report was filed until September 17, 1982, and no hearing was held until September 28, 1982. Meanwhile,

the plaintiff repeatedly communicated his fears of retaliation to Corsini, and wrote a letter to Ponte about the situation.

At the disciplinary hearing, Bannister told defendant Ponte and the three members of the disciplinary board that he feared for his safety in Middlesex II because Larrabee had a reputation for assaultive and retaliatory behavior.

On September 29, 1982 Bannister was released from "awaiting action" status but remained in Middlesex II, allegedly in violation of DOC regulations and practice, and despite his protestations. On October 4, 1982, the plaintiff was assaulted in Middlesex II by an inmate (later identified as Warren Masciemento) and suffered a wound to the head which required 14 stitches to close, left a permanent scar, and has caused very bad headaches, blurred vision, dizziness and damage to his sight.

The complaint purports to state claims for violation of Bannister's rights under the State Department of Corrections Regulations and violation of his Federal Constitutional rights.

### Violation of State Law

On the first issue, the plaintiff concedes that the transfer of a prisoner from one cell block to another, even if in violation of state law, is not an injury cognizable under § 1983. It is well established that § 1983 applies only where federal rights are violated. *Baker v. McCollan,* 443 U.S. 137, 146–147, 99 S.Ct. 2689, 2695–2696, 61 L.Ed.2d 433 (1979). Accordingly, I rule that the defendants' motion for summary judgment should be granted as to this portion of the complaint.

### Section § 1983 Claims Against Ponte and Corsini

The second issue involves the question of defendants Ponte and Corsini's liability under § 1983 for Bannister's injury. Although there is generally no § 1983 remedy available against one who negligently fails to prevent injury at the hands of a third person, there is an exception where, by reason of an involuntary commit-

ment to a prison or mental institution, the state places the plaintiff in peril. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Youngberg v. Romeo,* 457 U.S. 30, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Clark v. Taylor,* 710 F.2d 4 (1st Cir.1983). A prison official is "liable for a failure to act that reflects a reckless or callous indifference to the ... safety of the prisoners in his charge." *Clark v. Taylor,* 710 F.2d at 9; *See also Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ The focus of the Court's inquiry on a motion for summary judgment is therefore whether there is a genuine issue of material fact as to whether the defendants acted with reckless disregard or callous indifference to the plaintiff's safety. In this analysis, I note that the discovery materials are replete with claims by Bannister that he notified both Ponte and Corsini that he was in danger in Middlesex II because he feared retaliation from Larrabee. Depositions from two other prisoners corroborate Bannister's claim that he notified Ponte and further elaborate on the likelihood of retaliation by Larrabee or his associates.

In contrast, the depositions of defendants Ponte and Corsini indicate a lack of memory as to any such notification, and are silent as to any knowledge of the plaintiff's peril.

When deciding a motion for summary judgment a Court must draw all inferences from the record favorably to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The record in this case is such that there is clearly a genuine issue of material fact as to whether the defendants were aware of Bannister's peril. A jury could find that Ponte and Corsini transferred Bannister into a dangerous situation, kept him there despite his repeated pleas, and were on notice that his safety was at risk. Because the evidence, with all inferences drawn favorably to the plaintiff, would meet the "deliberate indifference" standard of *Clark v. Taylor,* I rule that

summary judgment should not be granted on this issue in favor of Ponte and Corsini.

■ The defendants also argue that they are entitled to qualified good faith immunity. *See Procunier v. Navarette,* 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The objective good faith standard propounded in *Harlow* would provide a defense for the Corsini and Ponte only if their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. 457 U.S. at 817–818, 102 S.Ct. at 2737–2738. I note that at the time of the events which are the subject of this complaint it was well established law that "prison officials have a duty under the 8th and 14th amendments to protect prisoners from violence at the hands of other prisoners." *Leonardo v. Moran,* 611 F.2d 397, 398–9 (1st Cir.1979). Consequently, I rule that the defendants are not entitled to summary judgment on the basis of good faith immunity.

*Section 1983 Claims Against Members of the Disciplinary Board*

The third issue before the Court involves the question of § 1983 liability on the part of the disciplinary board. This board is organized under, and operates pursuant to, regulations promulgated by the Commissioner of Corrections as authorized by M.G.L. c. 124 § 1(q). 130 CMR § 430.-01–.26. DOR regulations require that the Commissioner appoint three persons to serve on the disciplinary board, one of whom is to be designated as chairman. 130 CMR § 422.07. The board hears evidence regarding disciplinary infractions, 130 CMR § 422.13, makes findings of fact, 130 CMR § 422.14, renders a decision as to the inmates guilt or innocence, and may impose certain enumerated disciplinary sanctions, 130 CMR § 422.16.

Frank Milette, Joseph Carey, and David Pietrewicz sat on the board before which the plaintiff appeared. Although knowledge of the precise status of these individu-

als is important to the Court's analysis, there is a death of relevant information in the record. From the defendants' answers to interrogatories, it appears that defendant Milette, the board chairman, was also employed by the DOC as "Relief Officer/Sgt." Joseph Carey's regular employment was with the DOC as "Principal Clerk in Cost Office," at MCI Walpole. David Pietrewicz was, at the time, a "student intern/case social worker" at the institution.

The defendants argue that because the disciplinary board exercises judicial functions, its members are entitled to absolute immunity from civil suit. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). At this juncture, however, it is unnecessary for the Court to decide whether prison disciplinary boards enjoy absolute immunity because the actions complained of fall outside the scope of the board's judicial function. The essence of the plaintiff's allegations regarding the disciplinary board is that they "did nothing" in response to Bannister's pleas. I note that according to the governing regulations it was not within the board's power to take any corrective action regarding Bannister's situation. The Board has no power to assign an inmate to any particular block, or to effect his transfer from block to block. *See* 103 CMR § 430.23. Therefore, the plaintiff's request for the board's intervention was extraneous to the board's judicial function and the concept of judicial immunity plays no part in the Court's analysis. *Ward v. Johnson*, 690 F.2d 1098, 1109 (4th Cir.1982) (a prison disciplinary board qualifies for absolute immunity only where the action complained of is of a judicial character).

What remains, then, is to determine whether these three defendants were under any § 1983 duty to act on Bannister's request by attempting to influence those responsible for his plight. As noted previously, even state officers are generally under no duty to prevent injury at the hands of third persons. *See* discussion and cases cited *supra* at pp. 3, 4. There is case law, however, that a police officer or prison guard has a duty to intervene, even with a superior officer, to prevent a deprivation of constitutional rights. *Clark v. Taylor*, 710 F.2d 4, 9 (1st Cir.1983). A negligent failure to intervene will not give rise to liability, but liability will attach where an officer's failure "reflects a reckless or callous indifference to the rights and safety of the prisoners in his charge." *Id.* This duty has its basis in the officer's "position of responsibility." *Id.* For example, a police officer's duty to intervene is grounded in his responsibility to enforce the laws and preserve the peace. *Wilkinson v. Ellis*, 484 F.Supp. 1072, 1085 (E.D.Pa.1980).

■ It seems highly unlikely that the disciplinary board's narrowly-proscribed judicial function would constitute a "position of responsibility" with respect to matters beyond the scope of that function. Indeed, because the requested act was beyond the board's official capacity and responsibility, the board's failure to accede to the request does not constitute an abuse of official power under color of state law, and therefore does not fall within the ambit of § 1983. *See Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), *other aspects overruled, Monell v. City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, these three defendants were under no special duty to act on Bannister's request due to their status as members of the disciplinary board.

■ This analysis is, however, complicated by the fact that all three of these defendants held positions within the institution as DOC employees. It is unclear from the record whether these other positions, in and of themselves, carry responsibility for the care, custody and safety of the inmates. These are, of course, material facts which may be dispositive of the case against these three defendants. Because the moving parties have failed to show that there remains no genuine issue as to these material facts, I rule that they are not entitled to summary judgment on this theory. I further rule that defendants Carey,

Milette, and Pietrewicz are not entitled to summary judgment by reason of good faith immunity for the reasons articulated in the preceding section of this opinion. Accordingly, the motion for summary judgment should be denied as to the constitutional claims against these three defendants.

Order accordingly.