John CARILLO

v.

John J. MORAN.

No. 81–151–C.A.

Supreme Court of Rhode Island.

July 21, 1983.

Dennis J. Roberts II, Atty. Gen., Maureen McKenna Goldberg, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Asst. Public Defender, for defendant.

MURRAY, Justice.

## OPINION

MURRAY, Justice.

The applicant, John Carillo, appeals to this court from a judgment of the Superior Court denying his application for post-conviction relief. In his application, Carillo claims, pursuant to G.L.1956 (1969 Reenactment) § 10–9.1–1(a)(1), as enacted by P.L. 1974, ch. 220, § 3, that his convictions for murder and conspiracy to murder were obtained in violation of the Constitutions of the United States and the State of Rhode Island. Specifically, Carillo claims that the application of a benzidine solution to his body was an illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 6 of the Rhode Island Constitution.

The facts underlying the charges against Carillo, and his subsequent conviction, are

set forth in our opinion in *State v. Carillo,* R.I., 407 A.2d 491 (1979). We shall repeat only those facts relevant to the matter presently before us.

In June 1973, Carillo was an inmate at the Adult Correctional Institutions (ACI). Shortly after midnight on June 22, 1973, Correctional Officer Donald Price was discovered lying on the floor of the dayroom adjacent to B dormitory in the Medium Security building of the ACI. He was suffering from multiple stab wounds from which he later died. State Police thoroughly searched the premises and questioned each inmate confined in B dormitory. On the basis of physical evidence seized and implicating statements received, they arrested three inmates, including John Carillo.

All three inmates were then subjected to the application of a benzidine solution to their bodies. Benzidine, a chemical used to detect the presence of blood, when applied to a surface will turn blue if it comes into contact with blood. Benzidine was applied to Carillo's body, and a blue reaction was obtained. The state subsequently introduced into evidence at trial, over defense counsel's objection, ten color photographs of a naked Carillo with blue stains on various portions of his body.

Before the trial began, defense counsel filed a written motion to suppress the evidence of the benzidine test results. The motion alleged that the test violated Carillo's rights under the Fourth and Fourteenth

Amendments because it was a search incident to an illegal arrest and because the scope of the search itself was impermissible under the standards enunciated in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).[1] At the hearing on the motion to suppress, Carillo presented evidence solely on the issue of the illegality of the arrest. The trial justice ruled that there was probable cause for Carillo's arrest and denied his motion to suppress.[2] Carillo did not present any evidence or argument regarding the alleged illegal scope of the search and seizure.

On appeal to this court, Carillo first argued that the use of the benzidine test results violated his constitutional rights because the scope of the test was such that it was unreasonable without a warrant. He asked the court to consider that issue in light of all the relevant evidence in the record. At that juncture, we refused to consider the issue because it had not been pursued on the motion to suppress.[3] *See State v. Carillo,* 407 A.2d at 495. We suggested to Carillo, however, that he might raise this issue in an application for postconviction relief.[4] *Id.*

Carillo filed an application for postconviction relief on April 9, 1980, and amended his application on May 14, 1980. He alleged therein that the warrantless application of a benzidine solution to his body violated his rights under the Fourth and Fourteenth

1. The Supreme Court, in *Chimel v. California,* recognized the validity of a warrantless search incident to a lawful arrest but limited its legal scope to a search of the person of the arrestee and the area under his or her immediate control for the purposes of removing weapons and preventing the concealment or destruction of evidence. 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969).

2. We affirmed that ruling on appeal. *See State v. Carillo,* R.I., 407 A.2d 491, 495 (1979).

3. We went on, however, to consider the reasonableness of the benzidine test itself. Carillo argued that because of its carcinogenic properties the application of benzidine to his body offended fundamental notions of fairness and decency. We held that the use of the test had to be judged by what was known at the time

and that in light of that knowledge, as exhibited in the record, its use was not unreasonable nor did it offend common notions of decency and fairness. *State v. Carillo,* 407 A.2d at 496.

4. In our opinion we noted that if Carillo sought redress by way of the Postconviction Relief Act, consideration should be given to the issue of whether or not the application of benzidine to the body constituted a search. *State v. Carillo,* 407 A.2d at 495. The record indicates that subsequent to the issuance of our opinion, Carillo petitioned this court to amend the opinion to include explicit directions to the Superior Court regarding the issues to be heard on an application for postconviction relief. We denied his petition.

Amendments to the United States Constitution and under art. I, sec. 6 of the Rhode Island Constitution. The state moved to dismiss Carillo's application or, in the alternative, requested summary disposition of the matter, pursuant to § 10–9.1–6(b) and (c), as enacted by P.L.1974, ch. 220, § 3.

On June 24, 1980, a hearing was held on the state's motions before the Superior Court justice who had presided at Carillo's trial. The state contended that Carillo had waived his right to have the court consider the issue of whether the warrantless application of benzidine to his body violated the Fourth Amendment because he had failed to pursue it at trial. In the alternative, the state maintained that the issue was res judicata because Fourth Amendment issues had been raised on the motion to suppress, and the motion had been decided against Carillo. The state further argued that these were questions of law that could be decided by summary disposition and that there were no issues of fact requiring an evidentiary hearing.

Carillo contended that the issue before the court was whether the performance of the benzidine test was unreasonable without a warrant and therefore violative of the Fourth Amendment.[5] He asked the trial court to do what this court would not do on direct appeal, that is, to consider the entire trial record in ruling on that issue. He also requested the opportunity to present evidence on the dangers of benzidine and on whether the scope of the test was such that a warrant should have been obtained before performing it.

The trial justice issued a decision on July 14, 1980. He concluded that Carillo had raised no issues of fact in his application that were not fully covered in the record of the case and that, therefore, there was no need for an evidentiary hearing in the matter. The trial justice found, however, that there were legal questions to be briefed and argued. He directed the parties to address three issues: (1) whether or not the use of the benzidine constituted a search; (2) if so, whether such use violated the Fourth and Fourteenth Amendments and the Rhode Island Constitution, and (3) whether or not these issues had been waived by defendant or were precluded by res judicata.

After oral argument on October 27, 1980, the trial justice issued a bench decision and order, denying and dismissing Carillo's application.[6] A written decision was filed on February 27, 1981. The trial justice found that the application of benzidine was a search but that it was a valid search incident to a lawful arrest. He further found that the admission into evidence of the benzidine test results was, at most, harmless error given the other evidence against Carillo. Finally, the trial justice ruled that because Carillo had failed to press both of his Fourth Amendment objections to the admission of the benzidine test results on his motion to suppress, he had effectively waived his objection based on the reasonableness of the search without a warrant.

Carillo argues on appeal that although the trial justice never used the term "summary judgment" in either of his decisions, he effectively granted the state's motion for summary judgment pursuant to § 10–9.1–6(c).[7] Carillo contends that the trial justice erred in granting summary judgment because genuine issues of material fact existed. He maintains that he should have been allowed to present additional evi-

---

5. Carillo's counsel, however, conceded at the hearing that this court had already determined on direct appeal that the test itself was reasonable and that the only issue left undecided was whether it was the type of search which required a warrant.

6. Such an order is a final judgment and appealable to this court. General Laws 1956 (1969 Reenactment) §§ 10–9.1–7 and 10–9.1–9, as enacted by P.L.1974, ch. 220, § 3.

7. Section 10–9.1–6(c) allows the trial justice to grant a motion for summary disposition of an application for postconviction relief when it appears from the pleadings and the record, as well as from any depositions, answers to interrogatories, admissions, agreements of fact, and affidavits, that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

dence on the issue of the legality of the search and the question of whether he had waived his Fourth Amendment claim.

We agree with Carillo that the trial justice effectively granted the state's motion for summary judgment in this matter. However, for the reasons that follow, we uphold his decision on the grounds that the question of the legality of the benzidine test as it applied to Carillo was res judicata.

The doctrine of res judicata operates as an absolute bar to relitigation of the same issues between the same parties when a final judgment has been rendered. A judgment on the merits in the first case not only is conclusive with regard to the issues that were actually determined but also precludes reconsideration of all other issues that might have been raised in the prior proceeding. *Rosa v. Oliveira,* R.I., 424 A.2d 644, 645 (1981) (per curiam); *Molony & Rubien Construction Co. v. Segrella,* 118 R.I. 340, 344, 373 A.2d 816, 819 (1977). We have applied the doctrine of res judicata to postconviction-relief proceedings. In *Thornley v. Mullen,* 115 R.I. 505, 349 A.2d 158 (1975) this court held, on appeal from the denial of postconviction relief, that our decision on the defendant's direct appeal, in which we found no violation of his constitutional rights with respect to the identification of the defendant by a witness, was res judicata of a substantially identical issue raised in the application for postconviction relief. *Id.* at 507–08, 349 A.2d at 159. *Accord Commonwealth v. Senk,* 496 Pa. 630, 437 A.2d 1218 (1981) (an issue may not be relitigated in a post-conviction proceeding merely because a new or different theory is posited as a basis for reexamining an issue that has already been decided); *People v. Berland,* 74 Ill.2d 286, 24 Ill.Dec. 508, 385 N.E.2d 649 (1978), *cert. denied,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979) (points raised previously at criminal trial and other collateral proceedings cannot form the basis for a petition for relief from judgment); *Hall v. Warden,* 244 Md. 731, 225 A.2d 273 (1967) (per curiam) (based on statute similar to one in Rhode Island, defendant could not raise constitutional issue in postconviction proceeding which had already been adjudicated against him on direct appeal).

In the instant case, Carillo raised the issue of the legality of the benzidine test on Fourth Amendment grounds in his pretrial motion to suppress. He attacked the test on two grounds, claiming, first, that it was a search incident to an unlawful arrest and, second, that the scope of the search itself was unreasonable. He presented evidence only on the ground of the illegality of the arrest. He could have presented evidence and argument on the unreasonableness of the search but, for whatever reason, did not do so. The trial justice ruled that the results of the benzidine test were admissible into evidence because the test was performed incident to a valid arrest. On direct appeal, we affirmed that ruling, *State v. Carillo,* 407 A.2d at 495, and went on to say that we believed the test was reasonable. *Id.* 407 A.2d at 496.

It is clear that the question of whether or not the benzidine test violated Carillo's rights under the Fourth Amendment has been finally adjudicated against him. Section 10–9.1–8 of the Postconviction Relief Act provides that "[a]ny ground finally adjudicated * * * or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application * * *." We think the language of this statute and the principles of res judicata preclude Carillo from raising this issue again in a postconviction-relief proceeding simply because he has formulated a new theory of Fourth Amendment violation. Therefore, we hold that the trial justice was correct in granting the state's motion for summary judgment as there were no material facts at issue in Carillo's application for postconviction relief.

Moreover, we agree with the trial justice that Carillo has also waived his right to have this issue reconsidered on an appli-

cation for postconviction relief.[8] We have held that a defendant may waive his right to have a constitutional claim considered on appeal or in postconviction-relief proceedings if he makes a strategic or tactical decision to avoid the issue in earlier proceedings. *State v. Benoit,* R.I., 417 A.2d 895, 898 (1980); *State v. Duggan,* R.I., 414 A.2d 788, 791–92 (1980); *see State v. McGehearty,* 121 R.I. 55, 394 A.2d 1348 (1978). A defendant generally may not divorce himself from responsibility for his counsel's failure to raise or pursue issues at trial or on direct appeal absent a claim of ineffective assistance of counsel. *State v. Carvalho,* R.I., 450 A.2d 1102 (1982).

 In the instant case, Carillo raised the search-and-seizure issue on pretrial motion but failed to present evidence or to argue it at that time. At the June 24, 1980 hearing on the state's motion to dismiss or motion for summary judgment on his postconviction-relief application, Carillo presented no affidavit or offer of proof regarding the reason for his trial counsel's failure to pursue the issue previously, thus raising no issue of material fact for the trial justice to consider. Thus, the trial justice ruled that as a matter of law, Carillo had acquiesced in his trial counsel's strategic decision not to pursue the issue below and had waived his right to have it reconsidered in postconviction proceedings. We cannot fault him in that decision.

Because we have decided that the Fourth Amendment issue raised by Carillo in his application for postconviction relief is res judicata, we need not reach the other issues raised by the parties.

For the reasons stated, Carillo's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

BEVILACQUA, C.J., and SHEA, J., did not participate.

8. We note that although the trial justice had instructed the parties to argue the legal issue of whether Carillo's claims were waived or precluded by res judicata, he couched his decision in terms of waiver. He ruled that Carillo, by failing to argue the "search and seizure" issue that he had raised in his motion to suppress, had deliberately bypassed the issue and had therefore waived his right to rely upon it as a basis for his application for postconviction relief. We think this situation is more appropriately analyzed using the principles of res judicata. However, we think these two notions are very closely related.