John CARILLO, Petitioner, Appellant,

v.

John N. BROWN, et. al., Respondents, Appellees.

No. 86–1307.

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1986.

Decided Dec. 23, 1986.

---

Paul V. Curcio with whom Hinckley, Allen, Tobin & Silverstein was on brief for petitioner, appellant.

Thomas More Dickinson, Sp. Asst. Atty. Gen., Chief, Appellate Div., with whom Arlene Violet, Atty. Gen., was on brief for respondents, appellees.

Before TORRUELLA, Circuit Judge, WISDOM * and ALDRICH, Senior Circuit Judges.

WISDOM, Senior Circuit Judge:

John Carillo, serving a life sentence for murder and a sentence of ten years for conspiracy to murder, appeals from the district court's denial of the writ of habeas corpus. The petitioner makes two contentions. First, he asserts that state police officers violated his Fourteenth Amendment right to due process by applying benzidine, a carcinogenic chemical, to his skin; that this was an illegal search; that because the fruits of this alleged unlawful search (test) were not suppressed he was denied a fair trial. Second, he contends that he was denied a fair trial because the prosecutor's cross-examination implied guilt from the petitioner's exercise of his Fifth and Sixth Amendment rights to remain silent and to receive assistance of counsel. The petitioner filed a motion for an evidentiary hearing on his habeas claim. The district court denied this motion and dismissed the action for failure to state a claim upon which relief may be granted. We affirm.

* Of the Fifth Circuit, sitting by designation.

## I.

Donald Price was a security officer at the Adult Correctional Institute in Cranston, Rhode Island. On June 22, 1973, he was guarding a dormitory of prisoners, one of whom was Carillo. Shortly after 12:30 a.m., Price broadcast a distress call. Security guards answered his call and found him on the floor of the dormitory in a pool of blood. He was dying as a result of nine stab wounds. He bled profusely and blood was splattered on the walls.

State police officers arrived within minutes of Price's call for help, began a search, and seized a sharpened table knife that bore a residue of blood. The large amount of blood on Price and in the room suggested the likelihood that the attacker had come in contact with the victim's blood. The state police seized John Carillo's blood-stained undershorts and bedsheets.

Prior to any arrests, one of the prisoners told the state police that he had seen Carillo and another inmate fleeing from the murder scene shortly after he heard Price scream. That other inmate, an accomplice, told the police that Carillo killed Price. The police arrested Carillo.

The police officers noticed a substance that appeared to be blood on Carillo's arm. They applied the chemical reagent benzidine directly to Carillo's body. Benzidine is commonly used to detect blood on a surface. When a benzidine solution comes into contact with blood, it turns blue. Carillo's skin turned blue in various places; the prosecutor exhibited to the jury photographs of Carillo showing bluish splotches on his body.

At a pre-trial suppression hearing, Carillo filed a standard Fourth and Fourteenth Amendment motion to suppress the evidence showing the results of the benzidine test. His entire emphasis was on the exclusionary rule. First, he contended that without a warrant the test was a search incident to an unlawful arrest. Second, he contended that the scope of the warrantless search was unreasonable. He put on evidence as to the first allegation. He put on no evidence of the unreasonableness of the search (the test) itself, that is, the hazardous nature of benzidine, and made no effort to show that the officers knew or should have known of the hazards related to the use of benzidine. The court found that the benzidine was applied incident to a lawful arrest and denied his motion to suppress. A Rhode Island Superior Court jury convicted Carillo of murder and conspiracy to murder. The evidence of guilt was overwhelming.

On appeal of his conviction to the Rhode Island Supreme Court, Carillo argued for the first time that the search violated his Fourth and Fourteenth Amendment rights because benzidine can cause bladder cancer. Its direct application was, he alleged, an unreasonable risk to his life; benzidine is, in fact, carcinogenic when applied to the skin.

In spite of Carillo's not having raised the issue at the trial level, the Rhode Island Supreme Court examined the record to see if the officers who applied the benzidine knew that it was carcinogenic when they used it on Carillo's skin. In the suppression hearing and in the trial Carillo had not presented evidence of the hazards of benzidine or the officers' knowledge of its danger. One prosecution witness had testified that the chemical was an irritant. Another had testified that it was carcinogenic when applied to the skin. Because of no evidence in the record showing that the officers who applied the benzidine to Carillo knew that it was carcinogenic in such an application, the Rhode Island Supreme Court held that the test was reasonable.[1]

---

**1.** The Rhode Island Supreme Court stated:
[O]ur review reveals that the issue of the test's hazards was not raised at trial. Rather, this question is being raised for the first time on appeal.
    Indeed, the only hints at trial of the possible danger in using the substance came from a witness for the state. Specifically, the state's principal toxicologist testified that he would be "very reluctant" to perform the test on human skin because the chemical is an irritant; further Thomas B. Curran (Curran), an agent of the FBI who testified for the state, testified that he would not have used benzi-

Carillo also contended on appeal that the benzidine test was improper because no exigent circumstances justified a warrantless search. The Rhode Island Supreme Court noted that redress on that issue might be available to Carillo on post-conviction relief.[2] The Rhode Island Supreme Court affirmed the conviction.[3]

Carillo then applied to the state trial court for post-conviction relief, contending that the benzidine test violated his Fourth and Fourteenth Amendment rights. He sought to introduce evidence of the dangers of benzidine for the purpose of showing that a search involving the use of benzidine required a warrant. The trial justice denied the writ, holding that Carillo had raised no issues of fact not fully covered in the record and that, therefore, there was no need for an evidentiary hearing. On the law, he held that Carillo had waived his

objection based on the reasonableness of the search without a warrant by failing to press his objection in the suppression hearing.

Carillo appealed the denial of post-conviction relief to the Rhode Island Supreme Court. He argued that he should have been permitted to present additional evidence on the legality of the search. The Rhode Island Supreme Court affirmed the trial court,[4] repeated its earlier holding that the test was reasonable,[5] and added that the issue of reasonableness also was precluded by *res judicata*.[6] The Rhode Island Supreme Court stated that it agreed with the trial court that Carillo had waived his right to a reconsideration of the issue.[7] The court observed that the "notions" of waiver and res judicata are closely related, but preferred to decide the case against Carillo on the basis of res judicata.[8] The

dine on a body "[b]ecause it's carcinogenic". Yet, Carillo points to no other testimony concerning the test's danger, indicating that neither the defense nor the state had any detailed basis upon which to question the procedure's constitutionality upon that ground. Consequently, we cannot now say that, in light of what was known at the time, the test was unreasonable or that it offended common notions of decency. Furthermore, since the police were apparently unaware of any serious danger either to Carillo or to the officer who performed the test, it seems clear that application of the exclusionary rule in this case could not possible serve its stated purpose of deterring unconstitutional methods of law enforcement. *E.g., State v. Spratt*, 120 R.I. 192, 386 A.2d 1094, 1095 (1978), *citing, inter alia, United States v. Janis*, 428 U.S. 433, 446–47, 96 S.Ct. 3021, 3028–29, 49 L.Ed.2d 1046, 1056 (1976).
*State v. Carillo*, 122 R.I. 392, 407 A.2d 491, 496 (1979).

2. R.I.Gen.Laws §§ 10–9.1–1—10–9.1–9.

3. *State v. Carillo*, 122 R.I. 392, 407 A.2d 491, 498.

4. *Carillo v. Moran*, 463 A.2d 178 (R.I.1983).

5. Regarding Carillo's earlier appeal, the court stated:
"Carillo argued that because of its carcinogenic properties the application of benzidine to his body offended fundamental notions of fairness and decency. We held that the use of the test had to be judged by what was known at the time and that in light of that knowledge, as exhibited

in the record, its use was not unreasonable nor did it offend common notions of decency and fairness. *State v. Carillo*, 407 A.2d at 496. *Carillo v. Moran*, 463 A.2d at 180 n. 3.

6. *Id.* at 182.

7. *Id.*

8. The Rhode Island Supreme Court stated:
Section 10–9.1–8 of the Postconviction Relief Act provides that "[a]ny ground finally adjudicated ... or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application...." We think the language of this statute and the principles of res judicata preclude Carillo from raising this issue again in a post-conviction-relief proceeding simply because he has formulated a new theory of Fourth Amendment violation.
[W]e agree with the trial justice that Carillo has also waived his right to have this issue reconsidered on an application for postconviction relief....
In a footnote, the court stated:
We note that although the trial justice had instructed the parties to argue the legal issue of whether Carillo's claims were waived or precluded by res judicata, he couched his decision in terms of waiver. He ruled that Carillo, by failing to argue the "search and seizure" issue that he had raised in his motion to suppress, had deliberately bypassed the issue and had therefore waived his right to rely

court affirmed the denial of post conviction relief.[9]

Carillo then filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus in the federal district court in Rhode Island. He alleged violations of his Fourteenth Amendment due process rights arising from the benzidine test. He sought an evidentiary hearing on the question whether state officials knew or should have known of the carcinogenic effects of benzidine when they applied it to his skin. He also alleged violations of his Fifth and Sixth amendment rights arising from his cross-examination at trial. The respondents sought dismissal alleging waiver (deliberate bypass), lack of exhaustion, and other defenses. The district court denied relief.

## FOURTEENTH AMENDMENT ISSUE

■ The petitioner bases his due process claim on *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952),[10] holding that the Fourteenth Amendment outlaws state police actions that offend human dignity in a manner that "shocks the conscience" of the court. Evidence obtained from such actions must be suppressed. *Rochin* was an especially egregious example of police misconduct. The police officers "jumped" Rochin, tried to force open his mouth in attempting to extract two capsules which he put in his mouth and later swallowed, handcuffed him, and took him to a hospital. At the direction of one of the officers, a doctor forced an emetic solution through a tube into Rochin's stomach against his will. Rochin vomitted the two capsules which proved to contain morphine. The United States Supreme Court held that the police

methods offended "a sense of justice".[11] *See also Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) holding that the Fourth Amendment requires examination of whether extraction of blood samples was a search in a reasonable manner.[12]

The petitioner relies strongly on this Court's decision in *Clark v. Taylor*, 710 F.2d 4 (1st Cir.1983),[13] a civil rights action for damages under 42 U.S.C. § 1983, not a habeas case involving the exclusionary rule. The case was decided after the Rhode Island Supreme Court denied Carillo's post-conviction relief. In *Clark v. Taylor*, state police officers applied benzidine to the skin of Gomez, a prisoner. The Gomez incident occurred a year and one-half after the Carillo incident. Both Carillo and Gomez were inmates of the Adult Correction Institute in Rhode Island.

In *Clark v. Taylor*, this Court pointed out that the warden would not be liable under section 1983 for mere negligent failure to act. See *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).[14] We affirmed the judgment against the warden because the evidence was sufficient to support a finding that he "had a duty to protect the safety and well being of the plaintiff" and that "his failure to intervene to prevent the benzidine test reflected a reckless and callous indifference to plaintiff's safety."[15]

The Director of the State Crime Laboratory at the time of both the Carillo and Gomez tests was also held liable in *Clark v. Taylor*. He supplied the state police with the benzidine. By the time of the Gomez test, the director knew that benzidine may be carcinogenic when applied to

upon it as a basis for his application for postconviction relief. We think this situation is more appropriately analyzed using the principles of res judicata. However, we think these two notions are very closely related. *Carillo v. Moran*, 463 A.2d at 182–183.

9. *Id.* at 183.

10. 342 U.S. 165, 175, 72 S.Ct. 205, 211, 96 L.Ed. 183 (1952).

11. *Id.*

12. 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

13. 710 F.2d 4 (1st Cir.1983).

14. 434 U.S. 555 (1978).

15. *Clark v. Taylor*, 710 F.2d at 9.

the skin.[16] He did not warn the police about skin applications. "Based on this evidence, the jury could conclude that [the director's] conduct manifested such disregard for the safety of those on whom the benzidine might be applied as to render him personally responsible for their injuries." [17]

The state police officers who administered the test to Gomez were also held liable in *Clark v. Taylor*. Prior to Gomez's test in November 1974, they knew of a possible connection between benzidine and cancer.[18] "The jury could reasonably have concluded that the defendants knew or should have inquired further about the hazards of benzidine." [19]

Based on *Rochin* and *Clark v. Taylor*, the petitioner seeks an evidentiary hearing in federal court on the officers' knowledge of benzidine at the time of his test. The petitioner's theory is that if the officers knew or should have known of the carcinogenicity of benzidine as applied to the skin, then their failure to prevent the test would "shock the conscience" of the court. For this reason, and not to deter future police misconduct, the results of the blood test should be suppressed; so the argument runs. There is a modicum of appeal to this argument, were one of the objectives of the holding to deter police misuse of the benzidine test. But *Clark v. Taylor* has made clear to police officers that they must handle benzidine tests with regard to its hazards to a prisoner.

To have exhausted his state remedies, as required by 28 U.S.C. 2254(b) and (c), a habeas corpus petitioner must have presented the substance of his claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).[20] "The exhaustion requirement is not satis-fied if a petitioner presents new legal theories or new factual allegations in federal court that transform his case or cast it in a significantly different light". *Domaingue v. Butterworth*, 641 F.2d 8 (1st Cir.1981).[21]

Carillo's claim based on *Rochin* and *Clark v. Taylor* is not the same as the almost routine claim he asserted in the suppression hearing or at his trial. The issue of the hazardous nature of the test was not raised until the appeal to the Rhode Island Supreme Court. That court found no showing by Carillo that *"in light of what was known at the time, the test was unreasonable or that it offended common notions of decency".*[22] There was no evidence to support this contention of the petitioner because he presented none. In the state habeas proceeding the trial judge held that Carillo, as a "strategic decision", had waived his right by not objecting in the suppression hearing. The Rhode Island Supreme Court agreed with the trial judge as to the waiver, although it preferred to base its holding on *res judicata*. There is no doubt, as the Court pointed out, that under the law of Rhode Island, "the doctrine of res judicata [applies] to postconviction-relief proceedings".

The petitioner now seems to have adopted a new legal theory based on the language of *Clark v. Taylor:* the evidence resulting from the benzidine test should have been excluded because the officers "knew *or should have inquired further* about the hazards of benzidine".[23] The police misconduct, he argues, was so offensive that failure to suppress the results of the blood test deprived him of a fair trial. The Rhode Island Supreme Court's finding that the police officers "apparently" were

---

16. *Clark v. Taylor* does not establish that the director knew of the carcinogenic properties of benzidine at the time of the Carillo test, which was performed 18 months earlier.

17. *Clark v. Taylor*, 710 F.2d at 10.

18. *Clark v. Taylor* does not establish that the state police officers who administered the test to Carillo knew of the connection on June 22, 1973, the date of Carillo's test.

19. *Clark v. Taylor*, 710 F.2d at 11.

20. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

21. 641 F.2d 8, 12 (1st Cir.1981).

22. *See* note 1 (emphasis added).

23. 710 F.2d at 11 (emphasis added).

unaware of the dangers of benzidine should be disregarded because *Clark v. Taylor* has now established an *"objective"* standard; the issue, petitioner argues, is whether the State reasonably *should* have known that benzidine is carcinogenic. As stated in petitioner's brief: "No Rhode Island state court has ever determined what the state officials reasonably should have known regarding benzadine's propensities at the time that substance was administered directly to petitioner". As further stated: "In contrast to *Clark*, there has never been a record compiled in the present case that could support a finding regarding what state officials knew or should have known in 1973 when they administered benzidine upon petitioner".

Both these statements are accurate. They are accurate in that the petitioner failed to come forth with evidence or proffers of evidence that the officers knew or should have known about the hazards of using the benzidine test. If the petitioner has simply added a new *legal* theory to the petitioner's claim, based on *Clark v. Taylor*, the petitioner has not complied with the exhaustion requirement as stated in *Domingue v. Butterworth* and the other First Circuit cases cited in the opinion in that case.[24] Accepting this assumption, we are required to dismiss this habeas action, because the plaintiff has now come forth only with a new theory following a knowl-

edgeable waiver. Accepting the petitioner's argument at its face value, if this is a new *factual* issue, we are precluded from considering it because the state courts have not had an opportunity to address it.

We do not see anything in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)[25] a case in which the exhaustion of state remedies was not disputed, that requires the district court to hold an evidentiary hearing. This case does not come within the guidelines established for mandatory evidentiary hearings in a federal habeas case. In *Picard v. Conner* the Supreme Court said: "We emphasize that the federal claim must be fairly presented to the state courts.... [W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."[26] A federal habeas petition, therefore, that presents a claim that the petitioner did not raise or seek to raise in state court usually must be dismissed.[27]

*Clark v. Taylor* may or may not have created a claim so distinct from the claim petitioner presented in the state courts that, in the opinion of the Rhode Island courts, it is not subject to preclusion by waiver, claim-preclusion, or issue-preclusion. If so, the Rhode Island courts, not the federal district court, should be the first courts to address that issue. Federal

---

**24.** 641 F.2d at 12; *see also* Isaac v. Perrin, 659 F.2d 279 (1st Cir.1981).

**25.** 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

**26.** 404 U.S. at 275–76, 92 S.Ct. at 512 (1971).

**27.** The United State Supreme Court has noted that the failure to raise an available claim in state court does not always foreclose the requirement of a federal hearing. *Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982). Habeas relief is not intended as a remedy for a petitioner's failure when he had at trial "the tools to construct [his] constitutional claim." *Engle v. Isaac,* 456 U.S. at 133–34, 102 S.Ct. at 1574–75. The Constitution, the Court stated, "does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available and other defense

counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default". *Engle v. Isaac,* 456 U.S. at 134, 102 S.Ct. at 1575, (footnote omitted). In civil actions, counsel for other persons who were subjected to the benzidine test have asserted that the chemical's carcinogenicity creates constitutional questions about the test. *Clark v. Taylor,* 710 F.2d 4 (1st Cir.1983); *Marrapese v. Rhode Island,* 500 F.Supp. 1207 (D.R.I.1980), *rev'd,* 749 F.2d 934 (1st Cir.1984). We do not regard the petitioner's claim as so novel that its legal basis was not reasonably available to counsel giving rise to cause for his failure to raise the claim specifically in the state proceedings. *See Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). *Cf. Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

courts are bound by state law on the preclusive effect of state judgments. There is a glimmer of hope for petitioner in the Rhode Island Post-Conviction Remedy statute making post-conviction relief available when it is in the "interest of justice".[28]

We hold that the district court properly rejected the petitioner's motion for an evidentiary hearing; that the inadequacy of the record, if any, resulted from his failure to come forward with evidence at the suppression hearing, the trial, and the post-conviction hearing in the state courts. Except for the relevance of guilt, it may be unfortunate that counsel for Carillo did not foresee *Clark v. Taylor*. We feel impelled to hold, notwithstanding *Clark v. Taylor*, that there is at this time no federal habeas relief for the petitioner.

## FIFTH AND SIXTH AMENDMENTS CONTENTION

For reasons which are unclear, to say the least, the petitioner contends that during his cross-examination, prosecutor asked questions which implied that he was guilty because of his exercise of Fifth and Sixth Amendment rights. The allegedly offensive colloquy is quoted in the margin.[29]

In analyzing this issue on appeal, the Rhode Island Supreme Court concluded that the questions asked were never intended as commentary on defendant's exercise of his right to silence.[30] Furthermore, the court rejected any contention that the jury could construe the questions as a comment on the exercise of Fifth and Sixth Amendment rights.[31] The district court adopted a similar approach in rejecting Petitioner's claim on this issue:

> THE COURT: ... "It seems to me that to begin with the transcript clearly shows that what was said by the witness-defendant came right out of the blue, it wasn't prompted by a question or the part of the prosecutor at all and that it concluded by saying that the defendant petitioner here complained that he didn't get a lawyer even though he asked for one, I, for the life of me, cannot find any basis in that for concluding that this is a comment on the defendant's right to remain silent ..."

There is no merit to the petitioner's contention.

We have considered all of the issues raised by the petitioner whether or not discussed in this opinion.

---

**28.** The statute provides:

All grounds for relief available to an applicant at the time he commences a proceeding under this chapter must be raised in his original, or a supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief. R.I.Gen.Laws § 10–9.1–8.

**29.** The cross-examination contained this exchange:

"Q. And when were you told that you were under arrest?
A. I was downstairs when the state police detective told me.
Q. He told you that you were under arrest for murder didn't he?
Mr. Cicilline: Objection.

The Court: Sustained.
Q. Well what did he tell you that you were under arrest for?
Mr. Cicilline: Objection.
The Court: Overruled.
A. I think he said I was just under arrest, that if I wanted a lawyer I could have a lawyer.
Q. Gave you your constitutional rights?
Mr. Cicilline: Objection.... I move to pass [after stating reasons for objection].
Q. Gave you your constitutional rights? Asked you if you needed a lawyer, is that correct?
A. Yes, but he wouldn't give me one when I said I wanted a lawyer. He wouldn't give me one.
Q. You asked him for a lawyer, is that correct?
A. He said I could have a lawyer. I said yes, I want a lawyer."

**30.** 407 A.2d at 498.

**31.** *Id.*

The judgment of the district court denying the writ of habeas corpus and dismissing the petitioner's suit is affirmed.