**ATLANTIC TUBING & RUBBER COMPANY, Plaintiff-Appellant,**

v.

**INTERNATIONAL ENGRAVING COMPANY, Defendant-Appellee.**

**No. 75–1014.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1975.

Decided Jan. 13, 1976.

George M. Vetter, Jr., Providence, R. I., with whom Frank T. Barber, III, Lecomte, Shea & Dangora, Boston, Mass., and Hinckley, Allen, Salisbury & Parsons, Providence, R. I., were on brief, for plaintiff-appellant.

Ralph J. Gonnella, Providence, R. I., with whom Thomas C. Angelone and Hodosh, Spinella, Hodosh & Angelone, Providence, R. I., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and THOMSEN, Senior District Judge.*

THOMSEN, Senior District Judge.

Plaintiff appeals from a judgment entered pursuant to a general verdict for defendant at the second trial of this case. The first ended in a mistrial because the district judge concluded that the answers to questions submitted to the jury pursuant to Rule 49(a), F.R. Civ.P., were inconsistent with respect to certain issues. Plaintiff argues that the district judge erred in not entering a judgment for plaintiff at the first trial, and in his instructions to the jury at the second trial.

In 1965 plaintiff ordered from defendant an embossing roll, a cylinder, to be used in the process of forming soft plastic into sheets. Plaintiff specified that the ends of the embossing roll be of one-piece construction, i. e., that the ends of the cylinder (the "heads") and the posts which jut out from the heads (the "journals") be made from a single piece of steel, as shown in Figure 1. Defendant changed the design of each head and

* Of the District of Maryland, sitting by designation.

"shrink fit" and a weld,[1] as shown in Figure 2.

## Figure 1.

## Figure 2.

The rolls are used under various temperatures and pressures; the roll involved in this case had a smooth surface, which indicated that it would probably be used at lower temperatures and pressures than rolls with engraved surfaces. On March 25, 1972, while the roll was being used in a normal manner, one journal and head separated from each other sufficiently to allow a flammable coolant to

1. The purpose of a shrink fit is to hold the two pieces of metal together securely. There are degrees of shrink fit depending on the stresses and strains which the assembly has to bear. The shrink fit used here consists of fitting a cylindrical piece of metal (the journal) into a flat piece of metal with a round hole in it (the head). The hole is slightly smaller than the cylinder. The head is heated, which expands the size of the hole, and the journal is then inserted into the hole. When the head cools, the hole shrinks around the journal, thereby accomplishing a shrink fit.

In addition to the shrink fit a weld was applied around the circumference of the journal at the outside juncture of the journal and the head. The purpose of the weld is to add strength, and to seal the joint so that no fluid can escape.

leak out, vaporize and ignite, causing considerable damage to plaintiff's property.

At the first trial plaintiff contended that the separation of the head from the journal was caused either by an improperly designed shrink fit or an improperly manufactured shrink fit. The complaint included a count based on a strict liability theory[2] as well as a count based on alleged negligence in design and manufacture. Defendant offered evidence (which was not conceded but was not contradicted by plaintiff) that the journals on the roll at the time of the accident were longer than the journals on the roll at the time it was delivered to plaintiff by defendant, and therefore must have been replaced by plaintiff or someone on its behalf. Such a replacement would have necessitated the destruction of the original shrink fit and weld, relieving defendant of any liability.

After the close of the evidence at the first trial, the district judge submitted eighteen written questions to the jury under Rule 49(a).[3] The jury answered the questions, but was not discharged, because no question with respect to the amount of damages had been submitted to it.

The jury's answers justified the judge in ruling that defendant was not liable under a strict liability theory. Plaintiff does not challenge that ruling; it argues that the answers required the entry of a judgment for plaintiff on the issue of design negligence. After considering the answers, however, the district judge believed that the answers to the questions bearing on the issues of liability for design negligence and manufacturing negligence were inconsistent or ambiguous. After conferring with counsel, the judge decided that additional questions should be submitted to the jury to clarify their previous findings.

Accordingly, the judge prepared and submitted additional questions to the jury, with an appropriate explanation and instructions.[4] The jury answered the questions and appended a note to the judge. The result was confusion worse confounded. The judge properly concluded that the answers to the questions dealing with negligent design were inconsistent and precluded entry of a judgment in favor of either party on the negligence issues.[5] He therefore ordered a new trial "limited to the issues of negligence."

Such a trial was held and resulted in a general verdict for defendant. No interrogatories were requested or submitted at that trial.

---

2. *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255 (1971); Restatement of Torts, 2d, § 402A.

3. "Rule 49. Special Verdicts and Interrogatories

"(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits

any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

4. The judge took pains to let the jury know that he was not criticizing their initial answers.

5. The answers to the questions dealing with negligent *manufacture* indicated that the defendant negligently failed to properly weld and/or shrink fit the embossing roll, but that such negligence was not the proximate cause of plaintiff's damage. The jury also sent the judge a note which clearly indicated that it was hopelessly confused.

*The First Trial*

Plaintiff argues: (1) that the answers to the first set of questions submitted to the jury were consistent and required the entry of a judgment for plaintiff; and (2) that the district judge did not have the power under Rule 49(a) or otherwise to submit a second set of questions to the jury. Plaintiff does not deny that if the answers to the second set of questions may be considered, a new trial was properly ordered.

A preliminary issue to consider is the scope of appellate review over the district court's determination that the jury's responses were "ambiguous, if not inconsistent." Plaintiff suggests that this court must exercise an independent judgment on the question of the consistency or unambiguous character of the jury's answers to the interrogatories, and, if we believe that the jury's responses are not irreconcilably inconsistent, we must reverse and order the district court to enter a judgment for plaintiff. In support of this contention, plaintiff relies upon language in *Atlantic & Gulf Stevedores v. Ellerman Lines*, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), and *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), to the effect that it is the duty of the federal courts to attempt to harmonize the jury's answers to the interrogatories, if that is possible under a fair reading of them. We recognize, as did the district court, the force of this language, but we do not believe it supports the proposition that plaintiff urges. *Gallick* and *Atlantic & Gulf Stevedores* were both cases in which an intermediate appellate court had reversed a trial court's judgment on the ground that the jury's responses to the interrogatories were inconsistent. Both cases thus arose in a context in which an appellate court disagreed with a trial court's determination that the jury's responses should be accepted. Under these circumstances, the Supreme Court held that an appellate court must affirm if there is a view of the case that makes the jury's answers to the interrogatories consistent.

■ Although a trial court must be sensitive to the principles of *Gallick* and *Atlantic & Gulf Stevedores*, it has considerable discretion in applying them, and its refusal to enter judgment on the basis of a jury's answers to a set of interrogatories should not be reversed simply because an appellate court concludes that it is possible to reconcile the jury's responses. A federal trial court has broad discretion to refuse to accept a general verdict and to order a new trial when it believes that the ends of justice so require. See *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 354 (4 Cir. 1941) (Parker, C. J.); F.R.Civ.P. 59. This discretion encompasses the power to refuse to accept a jury's answers to special interrogatories. Hence, this court should reverse only if we find that the district court abused its discretion in refusing to enter a judgment for plaintiff.

■ Applying these principles to the case at bar, we cannot say that the district court committed reversible error in refusing to enter a judgment based upon the jury's initial answers to the interrogatories. The jury's answers were very difficult to reconcile. In question seven, the jury found that the embossing roll was not defectively designed—that is, that if properly manufactured it was not of a design that was unreasonably dangerous to the plaintiff—but in question thirteen the jury found that the defendant was negligent in modifying the design from one-piece to two-piece construction without knowing the specific operating data. The district judge feared that the jury's response to question thirteen was based upon a belief that defendant had breached its contract with plaintiff and upon the jury's failure to recognize the difference between breach of contract and negligence. Even more problematic were the jury's findings on proximate causation. In question fourteen, the jury found that defendant's negligence in modifying the design without knowledge of the specific

operating data was a proximate cause of plaintiff's harm, but in question sixteen the jury found that defendant's negligent failure to properly weld and/or shrink fit the two-piece embossing roll was not a proximate cause of plaintiff's harm. Although plaintiff attempts to reconcile these two sets of answers on the grounds that the jury made fine distinctions and/or believed that there could be only one proximate cause, we cannot hold that the district court— which had no general verdict against which to measure the jury's responses as it would have had if F.R.Civ.P. 49(b)'s procedure had been followed—committed reversible error in concluding that the jury's responses resulted from confusion or inconsistency.[6]

■ Our decision that the district court did not abuse its discretion in refusing to enter judgment for plaintiff disposes of plaintiff's second contention as well. Even if we were to conclude that the district court erred in submitting additional questions to the jury, it would not help plaintiff, since the second trial would have been required in any event. Thus, even if the district court erred in submitting additional questions, the error was harmless.

### The Second Trial

As noted above, the district court limited the grant of a new trial to issues of negligence, holding that the special verdicts at the first trial required entry of judgment for defendant on all issues of strict liability in tort. Plaintiff does not attack that limitation.

■ At the second trial, although plaintiff conceded that a two-piece design with a proper shrink fit would be adequate, it contended that defendant should have obtained "specific operating data" from plaintiff before designing the shrink fit. However, plaintiff did not offer any evidence tending to prove that the embossing roll involved in this case had been designed to have a shrink fit weaker than that normally employed on such a roll, or that the operating data which would have been supplied if defendant had asked for it would have revealed any unusual temperature or pressure requirements. Under these circumstances, the instructions to the jury removing negligent design from their consideration were correct, because plaintiff did not offer evidence tending to show that defendant's failure to ask for operating data had any causal connection with the damage suffered by plaintiff.

■ Plaintiff also challenges the instruction given the jury that if defendant could not have foreseen the use of a flammable coolant, it would not be liable for the fire damage. The question whether a defendant should be liable for all consequences of a negligent act, foreseeable or otherwise, and despite intervening acts, negligent or not, has received many different answers. See cases cited in Prosser, Torts, 4th ed. (1971), §§ 43, 44. The Rhode Island decisions, which control this diversity case, indicate: (1) that reasonable foreseeability is an important factor in placing practical limits on a defendant's liability for negligence. *D'Ambra v. United States*, R.I., 338 A.2d 524, 528, 529 (1975), see also, *id.*, R.I., 338 A.2d at 533 (concurring opinion); and (2) that the question of foreseeability is generally for the jury. *Denisewich v. Pappas*, 97 R.I. 432, 438, 198 A.2d 144, 148 (1964). See also Prosser, § 45 at 290.

Finally, although not necessary for decision, we observe that plaintiff at no time introduced any evidence that the journals were the same journals it received from defendant. There was evidence that the serial number on the damaged head identified that head as having been supplied by defendant. There was no evidence, however, that the original journal had remained in place—not even testimony that no change had been made. In contrast, de-

---

6. The district court's view was confirmed by the jury's answers to the four additional questions the district court submitted and by the note the jury returned with its answers.

fendant introduced uncontradicted evidence that it manufactured the roll (including the journals) in accordance with its blueprints, that the journals on the damaged rolls were not the journals it supplied, that journals can be, and often are replaced, and that to replace a journal, the original shrink fit and weld must be destroyed.

*Affirmed.*