Michael James KAVANAUGH, Jr.
and Mary Kavanaugh, etc.,
Plaintiffs, Appellants,

v.

GREENLEE TOOL COMPANY,
Defendant, Appellee.

No. 90–1534.

United States Court of Appeals,
First Circuit.

Heard March 4, 1991.
Decided Aug. 29, 1991.

Robert LeRoux Hernandez, with whom Lauren D. Kaufman, Malden, Mass., Dennis J. Calcagno and Calcagno, Jones & Tombari, Quincy, Mass., were on brief, for plaintiffs-appellants.

Anil Madan, with whom Georgia B. Vrionis and Madan and Madan, P.C., Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

After plaintiff-appellant Michael J. Kavanaugh, Jr. was injured while using a Greenlee "Super Tugger" cable puller, he, his wife Mary, and their minor children brought this diversity action against defendant-appellee Greenlee Tool Co. ("Greenlee"), the manufacturer, and Fishbach and Moore, Inc., the supplier.[1] The complaint alleged that Michael's injuries were caused by Greenlee's negligent design and manufacture of the Super Tugger and by its breach of related warranties.

The district court submitted special jury verdicts pursuant to Federal Rule of Civil Procedure 49(a).[2] On the basis of the jury's responses to the special verdicts, the district court entered judgment for defendants, and later denied plaintiffs' motion for judgment n.o.v. or new trial. On appeal, plaintiffs contend that the judgments must be set aside on the ground that the special verdicts are defective. We affirm.

I

DISCUSSION

A. *Verdict Inconsistencies*

The principal claim advanced on appeal is that the special jury verdicts cannot be harmonized; hence, a new trial is necessary. Alternatively, plaintiffs maintain that judgment must be entered against Greenlee as that is the only way the special

---

**1.** Fishbach and Moore, Inc. is not involved in the present appeal.

**2.** *See* Appendix at pp. 12–14 *infra.*

verdicts can be harmonized.[3] The parties agree that these special verdicts are governed by Federal Rule of Civil Procedure 49(a), which permits the district court to submit issues of fact to the jury in the form of written questions. Fed.R.Civ.P. 49(a).[4] *See generally* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 49.03 (2d ed. 1991). The clerk in turn is required to enter judgment in the form approved by the court based on the special verdicts; *see* Fed.R.Civ.P. 58(2). *See also Anderson v. Cryovac*, 862 F.2d 910, 915–16 (1st Cir. 1988) (discussing rule 49(a)).

■ "We note, initially, our 'substantial reluctance to consider inconsistency in civil jury verdicts a basis for new trials,'" *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 133 (1st Cir.1987) (quoting *Merchant v. Ruhle*, 740 F.2d 86, 91 (1st Cir.1984)). An appellate court confronted with a claim of inconsistent special verdicts "'must affirm if there is a view of the case that makes the jury's answers to the interrogatories consistent.'" *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 590 (1st Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979) (quoting *Atlantic Tubing & Rubber Co. v. International Engraving Co.*, 528 F.2d 1272, 1276 (1st Cir.), *cert. denied*, 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976)); *see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 443 (1st Cir. 1989). In the present circumstances we conclude that it was unnecessary for the district court to attempt a conventional reconciliation of the inconsistent verdicts.

All of the alleged inconsistencies in the special verdicts stem from the jury's failure to comply with the written instructions on the special verdict form *and* with the companion explanations given in the charge to the jury.[5] As to the inconsistency aris-

---

3. One category of alleged verdict inconsistencies pertains to the negligence count. Plaintiffs contend that the response to question 1(a), which determined that Greenlee was not negligent; is inconsistent with the responses to: a) question 3(c), that Greenlee was 40% negligent; b) question 6, which awarded Michael Kavanaugh $155,000 in damages; c) question 7, that Mary Kavanaugh suffered a loss of consortium; and d) question 8, which awarded damages to Mary Kavanaugh.

The other category relates to the warranty claims. Concerned that the affirmative response to question 5, *viz.*, that Michael Kavanaugh misused the Super Tugger, might negate the finding in question 4, *viz.*, that Greenlee was liable for breach of warranty, plaintiffs argue that special verdict 5 is contradicted by the responses to: a) question 6, which awarded damages to Michael Kavanaugh; and b) questions 7 and 8, which found liability and awarded· damages on Mary Kavanaugh's consortium claim.

4. Federal Rule of Civil Procedure 49(a) provides as follows:

(a) **Special Verdicts:** The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

Fed.R.Civ.P. 49(a).

5. During the charge to the jury, the district judge explained the written instructions on the special verdict form. In particular, the judge's charge drew the jury's attention to the written instructions on proceeding to question 3 after responding to questions 1 and 2. The judge also detailed the circumstances in which the jury should proceed to question 6, dealing with damages:

Now, if you found that either defendant or both were negligent and that the negligence caused injuries, that is, if you answered yes to both (a) and (b) as to either Fishbach & Moore or Greenlee or both of them; or if you found that Greenlee breached the implied warranty and Mr. Kavanaugh did not misuse the product, that is if you answer yes to 4(a) and (b), and you answered no to 5, then you reach the issue of damages [i.e., question 6].

It is clear that the jury, in proceeding to question 6 after having responded "no" to question

ing between questions 1 and 3, relating to Greenlee's liability on the negligence claim, the jury was instructed that *unless* it answered "yes" to both parts of questions 1 and/or 2, which it did not, it should not respond to question 3. *See infra* Appendix at p. *a.* Similarly, the inconsistencies spawned by the answers to questions 6, 7 and 8 resulted from the jury's failure to comply with the instructions appearing after question 5. *See id.* at p. *b;* note 5 *supra.* The instructions after question 5 directed the jury not to respond to questions 6, 7 and 8 unless it found a breach of warranty (question 4) *and* no misuse of the cable puller by Michael Kavanaugh (question 5), or unless it found negligence on the part of either defendant (questions 1 and 2). Since the jury found misuse on the part of Michael Kavanaugh and no negligence on the part of either defendant, it contravened the court's instructions by providing responses to questions 3, 6, 7 and 8.

In *White v. Grinfas,* 809 F.2d 1157 (5th Cir.1987), the jury disregarded written instructions not to proceed further if it responded in a particular fashion to a preliminary special verdict question. The district court resolved the resulting inconsistencies by disregarding the responses given to questions which the jury had been instructed not to answer. The Fifth Circuit affirmed.

> To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to termi-

nate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions. The subsequent questions are by definition irrelevant in these circumstances, and cannot be used to impeach the jury's clear verdict.

*Id.* at 1161; *see also Richard v. Firestone Tire & Rubber Co.,* 853 F.2d 1258, 1260 (5th Cir.1988) ("Thus, in *White* we recognized the broad discretion the district court enjoys to refuse to consider interrogatories answered in violation of the court's instructions."), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989).

 The district court possesses "considerable discretion" when it comes to the disposition of inconsistent special verdicts, a " 'discretion [that] encompasses the power to refuse to accept the jury's answers to special interrogatories.' " *Santiago–Negron,* 865 F.2d at 444 (quoting *Atlantic Tubing & Rubber Co.,* 528 F.2d at 1276). Where, as here, the complaining party, whether tacitly or explicitly, accedes to the written instructions on the special verdict form and to the companion directions included in the charge to the jury, and interposes no objection to the jury's inconsistent responses until after the jury has been discharged, the district court may exercise its discretion to reject special verdicts which the court, with the agreement of all parties, correctly instructed the jury not to answer.[6] Accordingly, we uphold Judge

---

1(a), *i.e.,* after finding Greenlee *not* negligent, failed to follow not only the written instruction under question 2(b) but the first portion of the jury charge quoted above.

**6.** The record reveals much more than tacit agreement on the part of plaintiffs' counsel. For instance, during its deliberations the jury asked permission to respond to question 4 before responding to question 3. Shortly after granting the request, Judge Zobel conferred with counsel. During the conference, Greenlee's counsel pointed out that permitting the jury to respond first to question 4 might lead the jury to overlook the instruction (following question 2(b)) to omit question 3 if it found no negligence under questions 1 and 2. Greenlee's counsel accordingly asked the court to caution the jury that it was not to proceed to question 3 unless it answered "yes" to both parts of ques-

tion 1 and/or question 2. Plaintiffs' counsel *objected* to the request: "No, I disagree. I think that if it should turn out that they went directly to three after answering no to one and two, it doesn't make any difference what they answered to number 3." Moreover, immediately after the special verdicts were returned, the court stated in the presence of counsel at side bar that judgment should be entered for Greenlee on the negligence and the breach of warranty counts due to the fact that "the jury found no negligence against the plaintiff ... and the jury found misuse by Mr. Kavanaugh." Plaintiffs' counsel responded: "Apparently so."

We conclude with an apt observation made by this court on an earlier occasion: "To countenance a setting aside of the verdicts in this case would place a premium on agreeable acquiescence to perceivable error as a weapon of

Zobel's decision to disregard the responses to questions 3, 6, 7 and 8.

## B. *Misuse Defense*

█ The remaining assignments of error turn on whether the special jury verdicts were spoiled by certain omissions in question 5, relating to Greenlee's "misuse defense." Under Massachusetts law, a breach of warranty claim fails if the defendant can demonstrate that "the plaintiff knew of the product's defect and its danger, [yet] ... proceeded voluntarily and unreasonably to use the product and ..., as a result, he was injured." *Allen v. Chance Mfg. Co., Inc.,* 398 Mass. 32, 494 N.E.2d 1324, 1326 (1986). Thus, question 5, which merely asked whether "Michael James Kavanaugh, Jr. act[ed] unreasonably in his use of the Greenlee cable puller," omitted certain key elements in Greenlee's misuse defense, *viz.,* whether Michael Kavanaugh "knew of the product's defect and its danger," and whether his injuries resulted from his misuse of the cable puller. *See id.* Moreover, the omissions were not cured by the jury charge.

█ We conclude nonetheless that plaintiffs have not preserved the issue for appeal.[7] Prior to the charge to the jury, the district judge and counsel went over the jury charge and the special verdict questions and instructions in great detail. When asked whether there were any objections or suggestions, plaintiffs' counsel responded "We're satisfied." After delivering the charge to the jury, the district judge once again invited the views of counsel. Plaintiffs' counsel acquiesced. Finally, after the special verdicts were returned and before the jury was discharged, plaintiffs' counsel failed to interpose objection. As we observed on an earlier occasion, in concluding that an appellant had waived a similar claim of error:

It is well settled that a litigant who accedes to the form of a special interrogatory will not be heard to complain after the fact. If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to their liking.

*Anderson,* 862 F.2d at 918 (citations omitted).

█ Plaintiffs assert additionally that they were denied their right to trial by jury on the issues of fact omitted from the special verdict form relating to the misuse defense. Rule 49(a) anticipates just such a belated seventh amendment claim, however, by providing that—

each party *waives the right to a trial by jury* of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; *or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.*

Fed.R.Civ.P. 49(a) (emphasis added); *see also Peckham v. Continental Cas. Ins. Co.,* 895 F.2d 830, 836 (1st Cir.1990); *Anderson,* 862 F.2d at 915–16. The purpose of the rule is to sidestep the "hazard [of] ... the verdict remain[ing] incomplete and indecisive" where the jury did not "decide every element of recovery or defense...." *Guidry v. Kem Mfg. Co.,* 598 F.2d 402, 406 (5th Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *see also Anderson,* 862 F.2d at 915–16 (discussing evolution of rule 49(a)).

The present record leaves little doubt that the reason the court made no findings on the omitted issues was that plaintiffs waited until after the jury was discharged before bringing the omissions to the attention of the court. Consequently, plaintiffs are deemed to have waived their right to

---

appellate advocacy." *Merchant,* 740 F.2d at 92 (Coffin, J.).

**7.** We note as well that plaintiffs would be precluded from assigning as error the district court's failure to charge the jury on the omitted elements of the misuse defense, since plaintiffs

asserted no timely objection at trial. *See* Fed. R.Civ.P. 51. *See, e.g., Transnational Corp. v. Rodio & Ursillo, Ltd.,* 920 F.2d 1066, 1068–69 (1st Cir.1990). We believe the written instructions on the special verdict form likewise come within the ambit of rule 51.

jury trial on those issues, *see, e.g., Anderson,* 862 F.2d at 916 (rule 49(a) "clearly admonishes parties that jury trial will be waived as to any issues not submitted"); hence, we deem the omitted findings of fact relating to Greenlee's misuse defense to have been made in conformity with the judgment entered on the special verdicts, as provided by rule 49(a), *see, e.g., Lewis v. Parish of Terrebonne,* 894 F.2d 142, 149 (5th Cir.1990); *Getty Petroleum Corp. v. Island Trans. Corp.,* 878 F.2d 650, 656 (2d Cir.1989).

Plaintiffs lastly contend that even if their right to a jury trial on the omitted issues was waived and the omitted findings were deemed made in accordance with the judgment, *see* Fed.R.Civ.P. 49(a), the findings were "clearly erroneous" and a new trial is necessary. Our review of the procedural history of the case satisfies us that this issue was not seasonably raised in the district court and therefore has not been properly preserved for appeal. *See Clauson v. Smith,* 823 F.2d 660, 666 (1st Cir. 1987) ("In the absence of extraordinary circumstances ... we have regularly declined to consider points which were not seasonably advanced below.") (collecting cases); *see also K–Mart v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir.1989) (same); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979) ("an issue not presented to the trial court cannot be raised for the first time on appeal.").

"[I]f a verdict-loser has made neither a timely motion for a new trial nor a timely motion for an instructed verdict, the court of appeals will not thereafter review the weight of the evidence undergirding the adverse verdict." *La Amiga Del Pueblo, Inc. v. Ismael Robles,* 937 F.2d 689, 691 (1st Cir.1991); *see also Jusino v. Zayas,* 875 F.2d 986, 991–92 (1st Cir.1989) (failure to file a seasonable motion under rule 50 or 59(a) precludes appellants from asserting sufficiency of evidence claim on appeal). Although plaintiffs moved for a directed verdict during trial, and for judgment n.o.v. or new trial within ten days after the entry of judgment, neither motion challenged the sufficiency of the evidence on the misuse defense. Plaintiffs asserted their present challenge to the sufficiency of the evidence, for the first time, thirty-four days after the entry of judgment, when they requested the district court to reconsider its denial of their earlier postjudgment motion. Since appellants' only challenge to the sufficiency of the evidence supporting the misuse defense was both belated and mispresented,[8] we decline to consider it.

*The judgment of the district court is affirmed; costs to appellees.*

## APPENDIX

1. (a) Was the defendant, Greenlee Tool Company, negligent?

 YES ____ NO "X"

 If your answer to part (a) is *YES*, please answer next part (b). If your answer to part (a) is *NO*, please answer next Question 2(a).

 (b) Did the negligence of Greenlee Tool Company cause or substantially contribute to cause Michael J. Kavanaugh Jr.'s injuries?

---

**8.** Even if we were to construe their motion to reconsider as a motion for judgment n.o.v. or new trial, plaintiffs could not prevail. Plaintiffs cannot obtain judgment n.o.v. since they failed to move for a directed verdict on the misuse defense. *See* Fed.R.Civ.P. 50(b); *Wells Real Estate, Inc. v. Greater Lowell Board of Realtors,* 850 F.2d 803, 810 (1st Cir.1988). Furthermore, the second motion, filed thirty-four days after entry of final judgment, was not a timely motion for new trial or for judgment n.o.v., since each such motion must be filed within ten days after entry of final judgment. *Marshall v. Perez–Arzuaga,* 866 F.2d 521, 523 (1st Cir.1989) ("Federal Rules of Civil Procedure 50(b) and 59(b) define the time period for filing of such motions as being not later than ten days *after entry of the judgment.*") (emphasis in original). *See* Fed.R.Civ.P. 50(b), 59(a), (b). The fact that plaintiffs filed their motion to reconsider within ten days after the district court's denial of their first postjudgment motion does not aid them, since the first postjudgment motion, while tolling the time for taking an appeal, did not extend the time for filing a motion under either rule 50(b) or 59(a). *See Roy Stone Transfer Corp. v. Budd Co.,* 796 F.2d 720, 722 n. 4 (4th Cir.1986). *Accord Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986).

YES _____ NO "X"

2. (a) Was the defendant, Fishbach & Moore, negligent?

 YES _____ NO "X"

 If your answer to part (a) is *YES*, please answer next part (b). If your answer to part (a) is *NO*, please answer next Question 3(a).

 (b) Did the negligence of Fishbach & Moore, Inc., cause or substantially contribute to cause the injuries of Michael J. Kavanaugh Jr.?

 YES _____ NO "X"

 If you answered *NO* to either part (a) or (b) of both Questions 1 and 2, please answer next Question 4, If you answered *YES* to both parts (a) and (b) of Questions 1 and/or Question 2, please answer next Question 3.

3. (a) Was the plaintiff, Michael James Kavanaugh, negligent?

 YES "X" NO _____

 If your answer to part (a) is *YES*, please answer next part (b). If your answer to part (a) is *NO*, please answer next Question 4(a).

 (b) Did the negligence of plaintiff, Michael James Kavanaugh, Jr., cause or substantially contribute to cause his injuries?

 YES "X" NO _____

 If your answer to part (b) is *YES*, please answer next part (c). If your answer to part (b) is *NO*, please answer next Question 4(a).

 (c) Expressed in percentages, the negligence of plaintiff, Michael J. Kavanaugh, Jr., and each defendant as to which you answered *YES* to both parts (a) and (b), was as follows:

 Michael James Kavanaugh, Jr.　　"60%"

 Greenlee Tool Company:　　"40%"

 Fishbach & Moore, Inc.　　"0%"
 　　　　　　　　　　　100%

 (PLEASE NOTE THAT THE SUM OF THE PERCENTAGES MUST BE 100%)

4. (a) Did the defendant, Greenlee Tool Company, breach the implied warranty of merchantability?

 YES "X" NO _____

 If your answer to part (a) is YES, please answer next part (b). If your answer to part (a) is NO, please answer next Question 5.

 (b) Did the breach of implied warranty of merchantability cause or substantially contribute to cause the injuries of Michael J. Kavanaugh, Jr.?

 YES "X" NO _____

 If your answer to both parts (a) and (b) is *YES*, please answer next Question 5. If your answer to either part of Question 4 is *NO*, but you answered *YES* to both parts of Question 1 and/or Question 2, please answer next Question 6.

5. Did Michael James Kavanaugh, Jr. act unreasonably in his use of the Greenlee cable puller?

 YES "X" NO _____

 If you answered *YES* to Question 5 and *YES* to both parts of Questions 1 and/or 2, or if you answered *NO* to Question 5 and *YES* to both parts of Questions 1, 2 and/or 4, please answer next Questions 6 and 7, Otherwise return your verdict to the Court.

6. Michael James Kavanaugh, Jr., is awarded damages in the amount of $"155,000.00".

7. Did any of the other plaintiffs suffer loss of society and companionship of Michael James Kavanaugh, Jr. as a result of his injuries?

 Mary Kavanaugh　　　　　　YES "X" NO _____

| | | | |
|---|---|---|---|
| Michael James Kavanaugh, Jr. | YES ____ | NO | "X" |
| Robert J. Kavanaugh | YES ____ | NO | "X" |
| Elizabeth Ann Kavanaugh | YES ____ | NO | "X" |

If your answer to any part of Question 7 is *YES*, please answer the corresponding part of Question 8, If your answer is *NO*, please return your verdict to the Court.

8. The damages of the other plaintiffs are:

| | |
|---|---|
| Mary Kavanaugh | $ "20,000.00" |
| Michael James Kavanaugh, Jr. | $____ "0"____ |
| Robert J. Kavanaugh | $____ "0"____ |
| Elizabeth Ann Kavanaugh | $____ "0"____ |