USCA1 Opinion

 

 August 21, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1082 COOL LIGHT COMPANY, INC., Plaintiff, Appellant, v. GTE PRODUCTS CORPORATION, Defendant, Appellee. ____________________ ERRATA SHEET The opinion of this Court issued on August 21, 1992, is amended as follows: On cover under list of counsel "Edward A. McCabe should be corrected to read "Edwin A. McCabe." August 21, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1082 COOL LIGHT COMPANY, INC., Plaintiff, Appellant, v. GTE PRODUCTS CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Lay,* Senior Circuit Judge, ____________________ and O'Scannlain,** Circuit Judge. _____________ ____________________ Edwin A. McCabe with whom Joseph P. Davis, III, Karen Chinn Lyons _______________ ____________________ _________________ and The McCabe Group were on brief for appellant. ________________ Alan van Gestel with whom Marie P. Buckley and Goodwin, Procter & _______________ _________________ __________________ Hoar were on brief for appellee. ____ ____________________ ____________________ _____________________ * Of the Eighth Circuit, sitting by designation. ** Of the Ninth Circuit, sitting by designation. LAY, Circuit Judge. This is an unusual and perplexing case. LAY _____________ Cool Light Company, Inc. (Cool Light) sought to develop and produce a new and superior light system for television and movies which would emit less heat, would last longer, and would produce better color quality on film. The lights, not surprisingly, were to be called "cool lights." Cool Light's founder, George Panagiotou, obtained all rights to the lighting concept and took his idea to Hollywood where he founded Cool Light in 1977. In 1978, Panagiotou was looking for a new supplier of specially coated reflectors needed to produce cool lights. He was approached by GTE Products Corporation (GTE) to produce the reflectors and the two parties entered into a business relationship which continued throughout 1979 and 1980. Dissatisfaction arose over the supply of coated reflectors, both in number and in quality, and problems arose over amounts owed by Cool Light to GTE. Cessation of supply resulted and Cool Light, facing a severe cash shortage, ultimately was forced to sell off its assets and became insolvent. Cool Light sued GTE on a number of claims, including beach of contract, breach of implied covenant of good faith and fair dealing, and fraud. After a twenty-four day trial, the district court1 submitted to the jury a number of special interrogatories in addition to general verdict forms. On the special interrogatory form, the jury found, inter alia: (1) GTE had made __________ a false representation to Cool Light that it could produce the number and quality of reflectors required, (2) Cool Light relied upon that misrepresentation, (3) Cool Light and GTE had both an oral and written agreement, and (4) GTE's actions cost Cool Light $9.3 million in loss of potential profits. The general verdict forms, however, indicated that Cool Light was due $3.694 million on the breach of contract claim, $2.8 million on the breach of ____________________ 1The Honorable John J. McNaught, presiding. -2- 2 implied covenant of good faith claim, and $9.45 million on the fraud claim. After the jury returned the verdict and special interrogatories, the court sent the jury back into the jury room to decide how much, if any, of the fraud damages were punitive. The jury returned with the answer that $2.95 million were compensatory in nature and $6.5 million represented punitive damages permitted under California law. In addition to the above, the jury returned a verdict for GTE on all other counts, including common law misappropriation of trade secrets, misappropriation of trade secrets under Mass. Gen. L. ch. 93, 42 (1990), misappropriation of information under section 759 of the Second Restatement of Torts, and misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code 3426 (West 1992).2 The jury also found against GTE on a counterclaim. An additional five counts, consideredto besounding inequity, weretried by thecourt.3 ____________________ 2The record is confusing as to whether this count was submitted to the jury. In Judge McNaught's August 9, 1990 memorandum and order he states that the count was submitted to the jury and that it found in favor of GTE. Judge McNaught also included this count in the list of those he intended to be retried. The final judgment entered December 11, 1991, however, indicates that this count was withdrawn before trial. There is some evidence on the record that the California statute was not in effect at the time the alleged misconduct occurred. 3Cool Light challenges the trial court's ruling in favor of GTE on Cool Light's claim that GTE violated Chapter 93A of the General Laws of the Commonwealth of Massachusetts, which makes unlawful any "[u]nfair . . . acts or practices in the conduct of any trade or commerce . . . ." Mass. Gen. L. ch. 93A, 2(a) (1990). Cool Light argues that the jury's finding that GTE violated the implied covenant of good faith and fair dealing required the court as a matter of law to find that GTE violated Chapter 93A. Cool Light cites Anthony's Pier Four v. HBC _____________________________ Associates, 583 N.E.2d 806 (Mass. 1991), in support of this __________ argument. In Anthony's, the trial court found in favor of _________ plaintiff on its ruling that defendant had violated the implied covenant of good faith and fair dealing, but the court denied plaintiff's claim under Chapter 93A. The Supreme Judicial Court of Massachusetts found that those rulings could not be squared, -3- 3 The district court granted GTE's motion for new trial on all of the counts submitted to the jury. Thereafter, upon stipulation the parties submitted only the three counts on which the jury found in Cool Light's favor. These three counts were then submitted to a new trial judge, the Honorable Robert E. Keeton, and a jury trial was waived. It was stipulated that certain witnesses would testify, and that Judge Keeton would make his findings and conclusions of law based upon his overall appraisal of the record of the first trial and any additional evidence presented before him. Judge Keeton entered a final judgment against Cool Light on all counts and dismissed GTE's counterclaim. He did so based upon a thorough analysis of the evidence, finding that Cool Light did not sustain its burden of proof relating to breach of contract, fraud, or breach of implied covenant of good faith and fair dealing. He further found Cool Light's evidence as to loss of profits to be entirely speculative. Upon entry of final judgment, Cool Light has ____________________ and that defendant as a matter of law violated Chapter 93A. Anthony's is distinguishable from the present case in two _________ important respects. First, the jury finding against GTE on the implied covenant of good faith count was vacated by the trial court and submitted for retrial. Under these circumstances, the jury's finding cannot be binding on the trial court's determination under Chapter 93A. Second, the trial court made separate findings of fact and conclusions of law with respect to the Chapter 93A claim. The court specifically found (1) GTE exerted its best efforts at producing the reflectors requested by Cool Light; (2) no binding contract existed between Cool Light and GTE; (3) no agreement existed between the two parties except that GTE would not divulge Cool Light's specifications to another GTE customer; (4) GTE's conduct should be viewed as simply refusing to continue doing business with a company that would not or could not pay its bills; and (5) Cool Light's evidence on lost profits was unpersuasive. The court also made findings as to the lack of credibility of certain Cool Light witnesses, including George Panagiotou. We therefore find no error with respect to the trial court's dismissal of Cool Light's claim under Chapter 93A. -4- 4 appealed only the grant of a new trial by Judge McNaught. It seeks to sustain the money damage award set forth in the jury's original verdict. Cool Light argues that the trial court had a duty to reconcile the apparent inconsistency between the verdict and the special interrogatory answer pertaining to Cool Light's total lost profits, and that the court abused its discretion by failing to enter judgment in its favor. We agree with Cool Light's assertion that the trial court had a duty to reconcile any inconsistency between the general verdict and the answers to the special interrogatories.4 The record is clear, however, that Judge McNaught did attempt to reconcile the inconsistency he perceived and concluded that he could not: And I have struggled in vain to come up with a sensible mode of determining how the jury would have struck upon different figures of $3,550,000 [sic], $2,950,000 and $2,800.000 [sic]. It would have been easier (and more understandable) had the jury simply divided $9,300,000 ____________________ 4See, e.g., Harvey v. General Motors Corp., 873 F.2d 1343, 1347 _________ _______________________________ (10th Cir. 1989); Schaafsma v. Morin Vermont Corp., 802 F.2d 629, ________________________________ 635 (2d Cir. 1986); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 2513, at 528-29 (1971); cf. ________________________________ ___ Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119 (1963) _____________________________________ (duty to reconcile answers to special interrogatories); O'Brien _______ v. Papa Gino's of America, 780 F.2d 1067, 1071 (1st Cir. 1986) ___________________________ (same). Cool Light also urges that GTE is barred from challenging any inconsistency between the special interrogatory answers and the verdict because of its failure to object on this ground before the jury was discharged. See Fernandez v. Chardon, 681 ___ _____________________ F.2d 42, 58 (1st Cir.) (failure to object to jury verdict under Rule 49 prior to discharge of the jury waives right to appeal), cert. denied, 459 U.S. 989 (1982); Skillin v. Kimball, 643 F.2d ____________ __________________ 19 (1st Cir. 1981). As Judge Keeton observed, however, Judge McNaught did not base his grant of a new trial solely on the inconsistency of the special interrogatories and the general verdict. Thus, the waiver rule recognized in this circuit with respect to Rule 49(b) does not apply here. -5- 5 by three and given $3,100,000 for lost profits on each count. They did not do so. . . . . In sum, one must speculate in order to assess the work of the jury. And that's wrong. If the plaintiff deserved a particular sum of money, he should not be required to be satisfied with a dollar less than that amount. Neither should he receive a dollar more than he deserves. On the present state of affairs, we don't know what he deserves. There must be a new trial. Of that I am satisfied. It seems to me also that the new trial should be had on all the counts which were submitted ___ for the jury's determination: not only on the counts where the jury found in plaintiff's favor, but on those counts where the jury decided against him. We cannot know for the moment precisely what evidence will be offered and admitted at a new trial. If, in fact, there is admissible evidence which makes a different impression on the jurors' minds, plaintiff may (be entitled to and may) prevail on one or more of the counts on which this past jury decided adversely to him. Cool Light Co. v. GTE Products Corp., No. 86-2668Mc, at 4-5 (D. _____________________________________ Mass. August 9, 1990) (memorandum and order on proposed orders of judgment and on motion for judgment n.o.v.). Cool Light's argument that the verdict and answer can be reconciled hinges upon its assumption that the jury awarded separate and distinct damages for each count; that each damage award can be causally related to a separate breach of duty. Cool Light further urges that although the compensatory damages awarded on the general verdict forms add up to $9,444 million, the extra $144,000 can be explained as some other form of compensatory damages, such as out-of-pocket expenses. The difficulty with this argument is that the trial record fails to support the theory that each claim was supported by -6- 6 separate damages. The trial court recognized throughout the trial that plaintiff's counts were alternative counts. In the instructions to the jury, the court explained: There are cases in which somebody has more than one arrow to fire; and this is one of those cases. When Mr. Panagiotou brought his case as against GTE, he decided that he ought to have 12 arrows to fire. So he stated what we call 12 theories of liability at law. And you're entitled to do that. When you bring a case in our courts you may say I want to recover either on the basis of tort or recover on the basis of contract. And if you can prove the essential elements of any theory of liability, then you're entitled to recover. That's called alternative pleading. Trial Transcript, Vol. 24, at 10. These instructions made clear the alternative nature of Cool Light's case, and Cool Light itself never spelled out any basis for finding separate damages. The law is clear that a party cannot recover multiple awards of damages for a single harm. Clark v. Taylor, 710 F.2d 4, 8 (1st _______________ Cir. 1983) ("[T]he amount of compensatory damages properly awardable does not depend on the number of theories under which plaintiff may recover, but on the extent of his injury."); see ___ also Diversified Graphics, Ltd. v. Groves, 868 F.2d 293, 295 (8th ____ ____________________________________ Cir. 1989); Clappier v. Flynn, 605 F.2d 519, 529-30 (10th Cir. _________________ 1979); Cunningham v. M-G Transp. Serv., 527 F.2d 760, 761-62 (4th _______________________________ Cir. 1975). Thus, not only is the answer to the special interrogatory inconsistent with the general verdicts, but the general verdicts are inconsistent with one another. In addition, we find it significant that in considering the non-jury claims Judge McNaught found no breach of contract, lack of good faith on the part of at least one of the plaintiff's witnesses, failure to prove fraud, and failure to prove damages. We mention this background because Judge McNaught observed in his new trial order: -7- 7 I considered granting judgment non obstante veredicto on one or more of the counts of the complaint which were given to the jury for determination, and decided against it, since, if a new trial is granted, new evidence might be offered. There is also the fact that even if I act in that fashion, we are still left to speculate concerning the award of damages, the source of the amounts decided upon by the jury, and the possibilities that the jury came up with inconsistent amounts, or amounts that were divided among the counts improperly. Cool Light Co. v. GTE Products Corp., No. 86-2668Mc, at 4-5 (D. _____________________________________ Mass. August 9, 1990) (memorandum and order on proposed orders of judgment and on motion for judgment n.o.v.). Thus, as Judge Keeton later observed: [E]ven if I assume that there was an inconsistency between the general verdict and the jury's response to special interrogatory number 14, . . . I nevertheless conclude that the order for new trial should not be vacated. Plaintiff has made no showing that Judge McNaught abused his discretion by ordering a new trial in light of his concerns about the verdict apart from the inconsistency issue. In the absence of any showing that Judge McNaught's order for new trial was a clearly erroneous exercise of his discretion--taking into consideration all of his expressed reasons for ordering ___ the new trial--the order for new trial will not be vacated, and plaintiff's motion for reconsideration will be denied. Cool Light Co. v. GTE Products Corp., No. 86-2668-K, at 4-5 (D. ______________________________________ Mass. July 25, 1991) (memorandum and order) (citation omitted). This inconsistency among the general verdicts also precludes Cool Light's argument that the trial court abused its discretion in failing to enter judgment on the special answer. While it is true that a trial court may enter judgment on the answer where there is an inconsistency between the general verdict and a -8- 8 special interrogatory answer,5 there is no abuse of discretion in failing to do so where the verdicts evidence either confusion or improperly duplicative awards. We are mindful of plaintiff's Seventh Amendment concerns in vacating a jury verdict. Yet there exists no violation of Seventh Amendment rights where a trial judge exercises his lawful discretion in awarding a new trial where speculation and confusion are manifest in not only the verdict but the evidentiary record itself. See Globe Liquor Co. v. San Roman, ___ ______________________________ 332 U.S. 571 (1948); Montgomery Ward & Co. v. Duncan, 311 U.S. ________________________________ 243 (1940); Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10 (1st _______________________________ Cir. 1991); MacQuarrie v. Howard Johnson Co., 877 F.2d 126, 131 _________________________________ (1st Cir. 1989) ("[t]rial courts have wide discretion when considering a motion for a new trial"); Atlantic Tubing & Rubber ________________________ Co. v. International Engraving Co., 528 F.2d 1272, 1276 (1st ____________________________________ Cir.) (broad discretion to order new trial "encompasses the power to refuse to accept a jury's answers to special interrogatories."), cert. denied, 429 U.S. 817 (1976); 6A James _____________ W. Moore & Jo Desha Lucas, Moore's Federal Practice 59.04[2] _________________________ (2d ed. 1991). A judge should not enter judgment on a verdict where it is impossible to understand the jury's intentions. To do so would make a mockery of the Seventh Amendment right of jury trial. We fully recognize the disappointment to the plaintiff in what appeared to be a vindication of plaintiff's rights in the form of a multimillion dollar verdict. Yet, to obviate confusion and to improve upon significant evidentiary gaps, Cool Light was given a second trial before a highly competent and fair-minded judge. His thorough analysis in finding plaintiff's failure of ____________________ 5Fed. R. Civ. P. 49(b); Stoddard v. School Dist. No. 1, 590 F.2d _______________________________ 829, 834 (10th Cir. 1979); Nimnicht v. Dick Evans, Inc., 477 F.2d ____________________________ 133, 135 (5th Cir. 1973); Elston v. Morgan, 440 F.2d 47, 49 (7th ________________ Cir. 1971). -9- 9 proof is totally justified by the record. We are convinced from our own review of the record that Judge McNaught's grant of a new trial was not a miscarriage of justice. We find no abuse of discretion in his ruling. Judgment affirmed. -10- 10